UNITED STATES DISTRICT COURT<br>
DISTRICT OF MASSACHUSETTS

_____
                         )

**FREDERIC LEPPER**         )
      **Petitioner,**         )

                         )

**v.**                       )      **Civil Action No. 04-11879-MLW**

                         )

**LOIS RUSSO,**           )
      **Respondent.**      )
_____)

**RESPONDENT'S MEMORANDUM IN OPPOSITION<br>
TO THE PETITION FOR WRIT OF HABEAS CORPUS**

     The respondent submits this memorandum in opposition to the petition filed by Frederic Lepper ("the petitioner") who was convicted in 1999 of larceny by false pretenses and home contractor fraud.  He raises four claims in his Petition:

> **Ground One**: The prosecutor's closing argument violated the petitioner's right to a fair trial;

> **Ground Two**: The denial of his request for substitute counsel and ultimately denial of effective assistance of counsel;

> **Ground Three**: Conviction obtained in violation of the right to have all facts which may increase the statutory maximum included in the indictment and found by the jury;

> **Ground Four**: Conviction obtained in violation of the petitioner's right to have the prosecution prove his guilt where the evidence was insufficient as a matter of law to support many of the counts. (Petition at 5-6, ¶ 12A-12D).

     In his Memorandum in Support of Petition for Writ of Habeas Corpus, the petitioner has presented new or different claims from those listed in his Petition.  (Cf. Petition at 5-6, ¶ 12A-12D with Petitioner's Memorandum of Law at 1).   He has dropped Ground One above regarding the prosecutor's closing argument; split Ground Two into two separate issues pertaining to trial counsel; retained Ground Three; and dropped

2

Ground Four challenging the sufficiency of the evidence. (Pet. Mem. at 1). The issues now presented by the petitioner in his Memorandum are:

> Ground One: Denial of the constitutional right to have all facts which may increase the statutory maximum sentence included in the indictment and found by a jury beyond a reasonable doubt (Pet. Mem. at 6-10)

> Ground Two: Denial of Sixth Amendment rights by forcing the petitioner to go to trial with unwanted representation and not offering him the opportunity to represent himself (Pet. Mem. at 10-13)

> Ground Three: Denial of right to effective assistance of counsel as guaranteed by the Sixth Amendment by trial counsel's failure to introduce substantial exculpatory evidence (Pet. Mem. at 13-19)

The petitioner did not move to amend his petition to reflect the new posture of the claims in his Petition pursuant to Fed. R. Civ. P. 15(a). It appears that the initial claims included in the Petition have been withdrawn and similar claims substituted. For this reason, the respondent will deem the withdrawn claims (or parts thereof) waived and will address only the three issues presented by the petitioner in his Memorandum. (Pet. Mem. at 1-19).

The Massachusetts Appeals Court (MAC) affirmed the petitioner's judgment of conviction and the denial of his motion for a new trial in 2003. *Commonwealth v. Lepper*, 60 Mass. App. Ct. 36, 798 N.E. 2d 1030 (2003)(Supp. Ans. Exh. 4). It is the respondent's position that the MAC's adjudication of Grounds One and Three was not contrary to nor an unreasonable application of clearly established Supreme Court law. *Williams v. Taylor,* 529 U.S. 362, 412 (2000). The respondent also submits that Ground Two is a procedurally defaulted claim and federal habeas review is foreclosed absent cause and prejudice or a showing of actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

3

## PRIOR PROCEEDINGS

On June 12, 1998, a Worcester County grand jury returned one indictment against the petitioner for twenty-four counts of larceny over $250 in violation of G.L. c.266, §30, and four counts of violation of the home contractor fraud in violation of G.L. c.142A, §40. The petitioner was tried by a jury in Worcester County Superior Court, Donahue, J. presiding, and on September 14, 1999, was found guilty on twenty-three counts of larceny by false pretenses and four counts of home contractor fraud. The petitioner was adjudicated a common and notorious thief under G.L. c.266, §40, and the judge imposed a sentence of 10-15 years at M.C.I. Cedar Junction on all the larcenies. On the four additional indictments for home contractor fraud, he was sentenced to one year in the House of Correction to be served concurrently with the larceny sentences.

The petitioner filed a notice of appeal on September 16, 1999, and the case was docketed in the Massachusetts Appeals Court. On November 20, 2001, the petitioner filed a motion for a new trial and the appeal was stayed pending a decision on the motion for a new trial. On April 1, 2002, the motion for a new trial was denied by the trial judge. The stay was vacated and the petitioner 's appeal of the denial of his motion for a new trial was joined with his direct appeal. On November 19, 2003, the Appeals Court affirmed the judgments of conviction and the order denying the motion for a new trial. *Commonwealth v. Lepper*, 60 Mass. App. Ct. 36, 798 N.E. 2d 1030 (2003)(Supp. Ans. Exh. 4). The petitioner filed an Application for Leave to Obtain Further Appellate Review in 2003 which was denied by the Supreme Judicial Court on January 29, 2004. *Commonwealth v. Lepper*, 441 Mass. 1102, 803 N.E.2d 332 (Table)(2003)(Supp. Ans. Exh. 6).

4

The instant habeas corpus petition was filed on August 27, 2004.

## STATEMENT OF THE FACTS

The Massachusetts Appeals Court's recitation of the facts of the petitioner's crimes is entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981) (holding that presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or an appellate court"). The Appeals Court summarized the crimes for which the petitioner was convicted as follows:

> From November, 1996, until November, 1997, the [petitioner] owned Laredo Building Systems, a company that built and installed large metal storage sheds and barns. Prospective customers learned of the [petitioner]'s business through advertisements in local publications directing them to call a toll-free "800" telephone number where they would leave information in response to a recorded message. Their calls were returned within a few days, either by the [petitioner] or, beginning in August, 1997, by his associate, Charles Hill, who was hired by the [petitioner] to sell the structures on a commission basis.
>
> A meeting was then scheduled with the customer where, typically, a contract was signed setting forth a start date for construction. The contract required payment of a deposit of one-third the total cost of building the structure, with another one-third to be paid upon delivery of the materials to the site, and the final one-third to be paid upon completion of the work.
>
> Beginning in February, 1997, the [petitioner] made misrepresentations to numerous prospective customers intending to induce them to part with their funds, which he succeeded in doing. Each interaction had unique aspects, but patterns emerge: the contracts set forth a specific start date for construction that could not have been met, and false assurances were given customers that work would commence at or near the contract date and that their structure would be completed two weeks after that.

5

> In the case of the twenty-three customers whose transactions with the [petitioner] formed the bases of the indictments against him, construction did not commence by the agreed-upon start date and, in most instances, did not commence at all. Despite numerous telephone calls to the [petitioner] or Hill inquiring about the status of the project, none of the twenty-three customers ever received a refund of their deposits. The defense, presented largely through testimony of the [petitioner]'s wife, was that the [petitioner] was an inept businessman who did not intend to defraud his customers.

*Commonwealth v. Lepper*, 60 Mass.App.Ct. 36, 39, 798 N.E. 2d 1030 (2003).

### STANDARD OF REVIEW

Because the petition for writ of habeas corpus was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), this Court's review of the petitioner's claims is governed by that statute. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997). The relevant statutory provision, 28 U.S.C. § 2254(d)(1), states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States

In *Williams v. Taylor,* 529 U.S. 362, 412 (2000) (O'Connor, J., Opinion of the Court) the Supreme Court gave independent meaning to both the "contrary to" and the "unreasonable application" clauses of the statute. *See id.* at 405. Under the first prong of § 2254(d)(1), the Court stated that a decision may be "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), in two ways. First, "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing

6

law set forth in [the Supreme Court's] cases." *Williams,* 529 U.S. at 405. Second, "[a] state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id.* at 405-406. The court interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," a phrase shared by both clauses, to "refer[] to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. The statute thus "restricts the source of clearly established law" to the Supreme Court's holdings. *Id.*

Under the second prong of § 2254(d)(1), "[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" qualifies as "'an unreasonable application of . . . clearly established Federal law.'" *Id.* at 407 (quoting 2254(d)(1)). In determining whether a state-court decision unreasonably applies Supreme Court precedent, "a federal habeas court should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. As the Court stressed, "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Under the "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. *Id.* at 411. The First Circuit has explained the degree of error that must be shown by the

7

petitioner to reach the level of an "objectively unreasonable" state court decision. "[S]ome increment of incorrectness beyond error is required….The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir. 2002) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000).

In addition, under AEDPA, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Sumner v. Mata*, 455 U.S. 591, 593 (1982); *Norton v. Spencer*, 351 F.3d 1, 6 (1st Cir. 2003). As the First Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2001).

## ARGUMENT

I.     **THE STATE COURT ADJUDICATION OF GROUND ONE WAS NOT CONTRARY TO NOR AN UNREASONABLE APPLICATION OF *APPRENDI V. NEW JERSEY*, 530 U.S. 466 (2000)**

In Ground One, the petitioner alleges that he was denied due process and the right to a jury trial because the trial judge adjudicated him a "common and notorious thief" under G.L. c. 266, § 40, without presenting to the jury the question of whether he had committed "three distinct larcenies." (Memorandum at 6-10). The relevant Massachusetts statute reads in pertinent part: "Whoever...is convicted at the same sitting of the court, as principal or accessory before the fact, of three distinct larcenies, shall be adjudged a

8

common and notorious thief, and shall be punished by imprisonment in the state prison for not more than twenty years or in jail for not more than two and one half years."   The petitioner claims that the jury,  not the judge,  should have been asked to decide whether there were three distinct larcenies involved and that the judge's sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).   In *Apprendi*, the Supreme Court struck down New Jersey's "hate crime" statute, which provided for an extended term of imprisonment upon a finding by the trial judge upon a preponderance of the evidence that, in committing the underlying hate crime, the defendant had " 'acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion,  sexual orientation or ethnicity.' "  *Id.* at 468-469.   The Supreme Court held that it was "unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed."  *Id.* at 490.

In rejecting the *Apprendi* claim,  the Appeals Court first noted that the judge adjudicated the petitioner a "common and notorious thief" based on the jury verdict that the petitioner committed twenty-three separate larcenies.  (Supp. Ans. Exh. 2 at 11-31). During trial twenty-two of the petitioner's victims from Maine, Vermont, Connecticut and Massachusetts testified, recounting their individual experiences with the petitioner and/or his business associate over the course of several months.  After the jury verdict was handed down, the trial judge sentenced him to ten to fifteen years in prison "on all of the larceny indictments." *Lepper,* 60 Mass. App. Ct. at 47.  The Appeals Court noted that the petitioner made "no claim that the evidence was insufficient to convict him of larceny with respect to

9

at least twelve of the indictments, nor that any one of the indictments was improper. " The

Appeals Court stated:

> The twenty-three indictments charged larceny by false pretenses from
> twenty-three separate individuals on different dates.  In order to convict, jurors
> were required to determine the facts with respect to each indictment beyond a
> reasonable doubt.  On each indictment, the [petitioner]  could not have been
> "convicted of anything less than a jury's finding of each element beyond a
> reasonable doubt." *Commonwealth v. Beale*, 434 Mass. 1024, 1025, 751 N.E.2d 845
> (2001).  There was no *Apprendi* violation resulting in the [petitioner]'s receiving an
> enhanced prison sentence on anything less than proof beyond a reasonable doubt.

*Commonwealth v. Lepper*, 60 Mass. App. Ct. at 48-49 (Supp. Ans. Exh. 4 at 8-9).  Thus, the

Appeals Court found, the jury by its decision demonstrated that it had considered all the

elements of the crime of larceny by false pretenses and found that the petitioner was guilty

of the twenty-three counts that were charged beyond a reasonable doubt.  Further, noted

the court, the petitioner received a maximum twenty year sentence when the statutory

maximum for the individual crimes was 115 years.  Clearly the petitioner was not exposed

to any enhanced sentence.  The court stated:

> Moreover, the [petitioner]'s sentencing alone avoids any *Apprendi* violation.
> Each larceny conviction carried a possible maximum five-year prison sentence, thus
> exposing him to consecutive sentences of up to one hundred and fifteen years.  See
> G.L. c. 266, § 30.  By comparison, an adjudication and consolidated sentencing
> under the common and notorious thief statute exposed the [petitioner] to a
> maximum prison sentence of only twenty years.  That is unlike the situation in
> *Apprendi* where, upon the judge's finding by a mere preponderance of the evidence
> that the baseline hate crime offenses had been committed with a biased purpose
> toward a specific group, the [petitioner]  faced an enhanced maximum aggregate
> sentence up to ten years longer than the maximum twenty-year consecutive
> sentences he could have received on the baseline offenses alone.  *Apprendi, supra* at
> 470, 120 S.Ct. 2348.  Here, the [petitioner] was not exposed to an enhanced sentence
> as a consequence of being adjudicated a common and notorious thief by the trial
> judge.  "[N]o *Apprendi* violation occurs as long as the [petitioner]  receives a
> sentence below the default statutory maximum applicable to the [baseline offense]."
> *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir.2001).  *See  United States v. Page*, 232

10

> F.3d 536, 545 (6th Cir.2000), cert. denied, 532 U.S. 935, 121 S.Ct. 1389, 149 L.Ed.2d
> 312 and 532 U.S. 1023, 121 S.Ct. 1965, 149 L.Ed.2d 759 (2001) and 532 U.S. 1056,
> 121 S.Ct. 2202, 149 L.Ed.2d 1032 (2001);  *United States v. Smith*, 240 F.3d 927, 930
> (11th Cir.2001).  In this case, the [petitioner]  received less than the "default
> maximum."  There was no error in adjudicating him a common and notorious
> thief.

*Commonwealth v. Lepper*, 60 Mass. App. Ct. at 47-49(Supp. Ans. Exh. 6 at 8-9).

   Contrary to the petitioner's argument, the Massachusetts Appeals Court correctly

applied *Apprendi* and later cases issued by the Supreme Court,  *see Blakely v. Washington*,

124 S. Ct. 2531 (2004), in concluding that the sentence imposed by the judge did not offend

the Due Process Clause.  *Apprendi* stands for the proposition that any fact that increases

the penalty for a crime beyond the statutory maximum must be submitted to the jury and

proved beyond a reasonable doubt.  In *Blakely* the court stated that their precedents make

clear that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge

may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the*

*defendant."* (Emphasis in original).  *Blakely*, 542 U.S. at 302, *citing Ring v. Arizona*, 536 U.S.

584, 483 (2002).  "In other words the relevant 'statutory maximum' is not the maximum

sentence a judge may impose after finding additional facts, but the maximum he may

impose *without* any additional findings." *Id*.  Where state law authorizes a sentence on the

basis of the verdict alone, without any additional findings by the trial judge, the sentence

will pass muster under the Due Process Clause and *Apprendi*.

   As the Appeals Court pointed out, the jury found the petitioner guilty beyond a

reasonable doubt of twenty three individual counts of larceny by false pretenses and the

trial judge was not required to make any additional findings of fact in order to sentence

him under the "common and notorious thief" statute.  The sentence imposed stemmed

solely from facts reflected in the jury verdicts.  *Blakely,* 542 U.S. at 302.  No *Apprendi*

violation occurs as long as a defendant receives a sentence below the default statutory

maximum.  *United States v. Craven* 190 F. Supp.2d 177, 183 (D. Mass. 2002).  *See United*

*States v. Duarte*, 246 F.3d 56, 59 (1st Cir.2001).

     The petitioner claims that he received an "enhanced" sentence since the judge

sentenced him as a common and notorious thief and the issue of whether the larcenies were

"distinct" was not submitted to the jury.  Under long standing Massachusetts precedent, a

person who is convicted of larceny under a single indictment containing at least three

counts may be adjudged a common and notorious thief because a conviction under each

count is a distinct larceny conviction. *See Commonwealth v. Carey*, 103 Mass 214, 216

(1869); *Benson v. Commonwealth,* 158 Mass 164, 166, 33 N.E. 384, 385 (1893). 32 Mass.

Prac., Criminal Law § 353 (3d ed.).   If several offenses are charged in the same indictment,

"[e]ach offence ... must be proved beyond a reasonable doubt, by evidence legally

applicable thereto.  It necessarily follows that the jury must pass upon each count

separately and apply to it the evidence bearing upon the defendant's guilt of the offense

therein charged."  *Commonwealth v. Carey*, 103 Mass. at 215.

     All the facts legally essential to the petitioner's sentence were found by the jury

beyond a reasonable doubt.  By virtue of the fact that the jury found the petitioner guilty of

23 individual and separate counts of larceny by false pretenses involving multiple

individuals in multiple states clearly indicates that distinct or discrete crimes were proven

beyond a reasonable doubt.  The most cursory review of both G.L. c.266, §40 and state

court decisions interpreting the statute demonstrates that no fact is removed from the jury's consideration in a trial judge's adjudication of a criminal defendant as a common and notorious thief.  As the statute makes plain, the judge's adjudication of a defendant as a common and notorious thief is based simply upon the verdicts rendered by the jury.  No other factual determination is brought into play.  Under state law, a criminal defendant who is adjudicated a common and notorious thief "is simply being given one consolidated sentence for the three larceny offenses of which he has been duly convicted." *Commonwealth* v. *Crocker*, 384 Mass. 353, 355,424 N.E. 2d 524, 526 (1981).  A defendant may be sentenced under the statute without notice of the possibility appearing in the indictment because the indictment itself gives notice.  *Id.*   Furthermore it is beyond question that the larcenies were separate where each count listed different dates and different victims living in far-flung communities in different states. (Supp. Ans. Exh. 2 at 11-33).  "Each larceny of which he was convicted was separate and distinct from the other two. They were committed at different times. They related to two separate and distinct contracts of the ...company made at two different times as to the construction of different buildings."   *Commonwealth. v. McKnight,* 289 Mass. 530, 547-548, 195 N.E. 499 (1935). Nothing contained in *Apprendi* undermines the SJC's conclusion that the common and notorious thief statute "provides merely that in some cases larceny shall be punished in a certain way" *see Collins* v. *Commonwealth*, 315 Mass. at 170, and no additional factual findings were necessary for the trial judge to impose a sentence on the petitioner.   The Appeals Court's adjudication was not contrary to nor an unreasonable application of clearly established Supreme Court law.

13

II.    **GROUND TWO IS IN PROCEDURAL DEFAULT AND IS FORECLOSED FROM FEDERAL HABEAS CORPUS REVIEW.**

In Ground Two, the petitioner asserts that he was forced to go to trial with unwanted representation and was not offered the opportunity to represent himself, in violation of his Sixth Amendment right to counsel. (Pet. Mem. at 10-13). He did not raise this claim at trial or in his motion for a new trial but proffered it for the first time in his appellate brief. The Appeals Court noted this fact and rejected the claim on the ground that there was no substantial risk of a miscarriage of justice. *Commonwealth v. Lepper*, 60 Mass. App. Ct. at 53-54 (Supp. Ans. Exh. 4 at 11).

> "A motion to discharge counsel, when made on the eve of trial, or on the day on which trial is scheduled to begin, 'is a matter left to the sound discretion of the trial judge.' " *Commonwealth v. Tuitt*, 393 Mass. 801, 804, 473 N.E.2d 1103 (1985), quoting from *Commonwealth v. Moran*, 388 Mass. 655, 659, 448 N.E.2d 362 (1983)(trial judge has discretion to change counsel, but only after letting the [petitioner] articulate reasons for the request). The [petitioner] was given the opportunity to articulate the reasons for his dissatisfaction, thereby allowing the trial judge to decide on an informed basis that trial counsel was doing a satisfactory job and would not be removed. There was no abuse of discretion in denying the request for new counsel and no substantial risk of a miscarriage of justice.

*Id.*

The Massachusetts Appeals Court's determination that there was no substantial risk of a miscarriage of justice constitutes an adequate and independent state law ground within the meaning of the procedural default rule which precludes habeas review. *See Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997), *cert. denied*, 522 U.S. 1151 (1998).

The "procedural default rule" reflects the Supreme Court's view that, in the interests of comity and federalism, a habeas court should "'not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is

14

independent of the federal question and adequate to support the judgment.'" *Boutwell v. Bissonnette*, 66 F. Supp.2d 243, 245 (D. Mass. 1999), *quoting Coleman v. Thomspon,* 501 U.S. 722, 729 (1991). Such independent and adequate state grounds exist where, as here, "'the state court declined to hear [the underlying claim] because the prisoner failed to meet a state procedural requirement.'" *Simpson v. Matesanz,* 175 F.3d 200, 206 (1st Cir. 1999), *cert. denied*, 528 U.S. 1082 (2000), *quoting Brewer*, 119 F.3d at 999.

Massachusetts has a "long-standing rule that issues not raised at trial ... are treated as waived." *Commonwealth v. Curtis*, 417 Mass. 619, 632 N.E.2d 821, 827 (Mass. 1994). The First Circuit has repeatedly recognized that "Massachusetts has ... routinely enforced, [and] consistently applied [the] contemporaneous objection rule," which requires a party to object to a perceived trial error at the time the error occurs to preserve the issue for appellate review. *See Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995) (collecting cases); *see also Brewer*, 119 F.3d at 1001 (describing Massachusetts' contemporaneous objection rule as "firmly entrenched"). Where, as here, a party fails to make a timely objection, appellate review under Massachusetts law is limited to determining whether the alleged error posed a likelihood of a miscarriage of justice. *See Burks*, 55 F.3d at 716, n. 2; *Commonwealth v. Carter*, 423 Mass. 506, 669 N.E.2d 203, 208 (1996) (standard for review of unpreserved errors in capital case).

The limited review undertaken pursuant to the Massachusetts "miscarriage of justice" standard does not operate as a waiver of the underlying procedural default. *Burks,* 55 F.3d at 716, n. 2. To the contrary, such review constitutes the "classic example of an independent and adequate state ground" supporting application of the procedural default

rule. *Simpson,* 175 F.3d at 207.  Habeas review, therefore, is precluded on this claim unless the petitioner  "can demonstrate cause for default and prejudice stemming therefrom, or, alternatively, unless [he] can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice."  *Burks,* 55 F.3d at 716.  No such showing can be made here.

"To excuse a procedural default, a petitioner's cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule."  *Burks*, 55 F.3d at 716-17.  No such factor "external" to the defense existed here.  There was, for instance, no governmental interference that prevented the petitioner from complying with the state procedural rules.  *See  Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The only other potential cause available to the petitioner is alleged attorney error or oversight in failing to timely object.  It is well settled, however, that attorney error or oversight is not sufficient cause for excusing a procedural default unless it rises to the level of constitutional ineffective assistance.  *See id.; Burks*, 55 F.3d 712.  Nor can the petitioner demonstrate actual prejudice sufficient to excuse his default.  *See Coleman*, 501 U.S. at 750.

Absent cause and actual prejudice sufficient to excuse his procedural default, the only other avenue available to the petitioner – that a refusal to hear his defaulted state law claim would result in a "fundamental miscarriage of justice" – is foreclosed.  *Simpson,* 175 F.3d at 210.  This exception to the procedural default rule is "'seldom to be used, and explicitly tied to a showing of actual innocence.'"  *Killela v. Hall,* 84 F. Supp.2d 204, 210 (D. Mass. 2000), quoting *Burks*, 55 F.3d at 717.  This case does not fall within the "narrow class

16

of cases ... implicating a fundamental miscarriage of justice where, notwithstanding a procedural default, a petitioner may "obtain review of his [or her] constitutional claims."' *Schlup v. Delo*, 513 U.S. 298, 314 (1995). The petitioner has not presented "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *Schlup*, 513 U.S. at 316. In order to demonstrate actual innocence in a collateral proceeding, a petitioner must present "`new reliable evidence that was not presented at trial." *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (*quoting Schlup v. Delo*, 513 U.S. 298. 299. 327-28 (1995). The new information must rise to the level of "clear and convincing evidence of innocence." *Williams v. Taylor*, 529 U.S.   , 120 S. Ct. 1479, 1489(2000). Further, actual innocence means factual innocence, not mere legal insufficiency. *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998). The petitioner cannot meet this standard in light of the compelling testimony of twenty-two witnesses and the overwhelming evidence against him.

The petitioner's reliance on a per curiam decision*, Medellin v. Dretke*, 544 U.S. 660 (2005)(Ginsburg, concurring), in which the Supreme Court dismissed a writ of certiorari as "improvidently granted "is misplaced. *Id.* at 666. The petitioner asserts that this case stands for the startling proposition that procedurally defaulted claims must be reviewed *de novo* by a federal habeas corpus court. (Pet. Mem. at 11). Under long standing Supreme Court precedent, procedurally defaulted claims cannot be reviewed at all by a federal habeas court absent "cause and prejudice" or proof of actual innocence. *See infra*.

17

In *Medillin,* the Supreme Court considered whether a federal court is bound by the International Council of Justice's ruling that the United States courts must reconsider a petitioner's claim for relief under the Vienna Convention on Consular Relations without regard to procedural default doctrines. *Medillin*, 544 U.S. at 661.   The Court did not answer the question because there were several threshold issues that precluded habeas corpus relief including whether the case was cognizable by a federal court and whether the petitioner would have to overcome the deferential standard of 28 U.S.C. § 2254(d)(1) before obtaining relief on the Vienna Convention claim. *Id.*  Clearly this case did not overrule the procedural default doctrine which still provides that " [w]hen a state prisoner has defaulted a claim by violating a state procedural rule which would constitute adequate and independent grounds to bar direct review in the U.S. Supreme Court, he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 750-51 (1991)).  Thus, a state prisoner who fails to satisfy the state procedural requirements forfeits his right to present his federal claim in federal habeas. *Murray v. Carrier*, 477 U.S. 478, 485-492 (1986).   Ground Two is in procedural default and not amenable to review by a federal habeas court.

III.   **THE STATE COURT ADJUDICATION OF GROUND THREE WAS NOT CONTRARY TO NOR AN UNREASONABLE APPLICATION OF *STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984).***

In Ground Three, the petitioner claims that he was denied the effective assistance of counsel because trial counsel failed to introduce allegedly exculpatory evidence that was in his trial file.  He asserts that trial counsel failed to present a full defense in an organized fashion and that the jury was prevented from seeing the true nature of the business. (Pet.

18

Mem. at 13-19).  The Appeals Court rejected this assertion, citing in support the motion

judge's presumptively correct  factual assessment of defense counsel's performance at trial

as follows:

> Responding to this claim, the motion judge, who was also the trial judge and
> had the opportunity to observe defense counsel in action, found as follows:
> 'Defense counsel made a forceful argument on the [petitioner]'s motion for a
> required finding of not guilty regarding whether false statements were made.  The
> [petitioner]'s  trial counsel presented to the jury in an organized fashion the
> [petitioner]'s check registers, bank statements, and other data, as well as witness
> testimony that the [petitioner] had paid bills to suppliers, had legitimate business
> expenses and had built some buildings.  Defense counsel's closing argument focused
> on the elements of the crime and asserted that the [petitioner] was merely an
> inexperienced businessman with good intentions who was experiencing difficulties
> in his personal life.  With one hundred and twenty-one exhibits on their hands, the
> jurors were armed with sufficient information on which to reach a fair result.'

*Lepper*, 60 Mass. App. Ct. at 50, n.8.  *See Sanna v. DiPaola, 265 F. 3d at 6* (Under 28 U.S.C.

§ 2254 (e)(1) a determination of a factual issue made by a State court shall be presumed to

be correct).  The First Circuit defines facts as "basic, primary, or historical facts: facts in

the sense of a recital of external events and the credibility of their narrators." *Id. quoting*

*Bryson v. Ward*, 187 F.3d 1193, 1211 (10th Cir.1999).    The state appellate court adopted

the trial judge's factual findings of trial counsel's actions and its application of these facts

resulted in an adjudication that was not contrary to nor an unreasonable application

clearly established Supreme Court law. [1]

---

[1] **The petitioner's argument that this Court should review his ineffective assistance
of counsel claim *de novo* because the Massachusetts Appeals Court did not cite any federal
cases in its decision is without merit.  However, the United States Supreme Court  in *Early
v. Packer*, 537 U.S. 3,6 (2003), held that citation to controlling Supreme Court precedents is
not required under 28 U.S.C. § 2254(d).  "[D]eference does not depend on the state court
citing federal case law.  *Ellsworth v. Warden*, 333 F.3d 1, 4 n.1 (2003).  The deferential §
2254 review must proceed "even when there is little fodder to feast on." *Braddick v.
Magnusson*, 2005 WL 1530269, 3 (D.Me.).   All that is required is "*awareness* of our cases,**

19

In *Williams v. Taylor*, 529 U.S. at 390-391, the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984) was the clearly established federal law that controlled claims related to ineffective assistance of counsel. The *Strickland* analysis may be stated as follows: to determine whether counsel's performance was sufficient under the Sixth Amendment, the inquiry "is whether counsel has brought 'to bear such skill and knowledge as will render the trial a reliable adversarial testing process.'" *Scarpa v. DuBois*, 38 F.3d 1, 8 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995), *quoting Strickland v. Washington*, 466 U.S. 668, 688 (1984). *See Bell v. Cone*, 122 S.Ct. at 1850. In state court, the petitioner bore the heavy burden of proving ineffective assistance, *Scarpa v. DuBois*, 38 F.3d at 8-9; *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993), which required a two-part analysis. First, the petitioner is required to show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690. That is, he needs to establish "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The standard "demands a fairly tolerant approach," *Scarpa v. DuBois*, 38 F.3d at 8, as the Constitution does not guarantee "a letter-perfect defense or a successful defense." *United States v. Natanel*, 938 F.2d 302, 309 (1st

---

so long as neither the reasoning nor the result of the state-court decision contradicts them." (emphasis by Court)." *Early v. Packer*, 537 U.S. at 6.

    Moreover, the Appeals Court relied in its ruling on leading Massachusetts cases that deal squarely with the issue of ineffectiveness of counsel as enunciated in *Commonwealth v. Saferian*, 366 Mass. 89, 315 N.E. 2d 878 (1974) and its federal counterpart, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Commonwealth v. Lepper*, 60 Mass. App. Ct. at 49-50. The First Circuit has found that the state Saferian standard in the functional equivalent of the federal Strickland standard. *Scarpa v. Dubois*, 38 F. 3d 1, 7 n. 4 (1994).

20

Cir. 1991), *cert. denied*, 502 U.S. 1079 (1992). *See Williams v. Taylor*, 529 U.S. at 390-391;

*Matthews v. Rakiey*, 54 F.3d 908, 916 (1st Cir. 1995).

The state court was not to apply the performance standard "in hindsight, but based

on what the lawyer knew, or should have known, at the time his tactical choices were made

and implemented." *United States v. Natanel*, 938 F.2d at 309. Moreover, that court was

required to "'indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance.'" *Scarpa v. DuBois*, 38 F.3d at 8, *quoting*

*Strickland v. Washington*, 466 U.S. at 689. *See Genius v. Pepe*, 147 F.3d 64, 66 (1st Cir.

1998) ("counsel's judgments in formulating the defense strategy are entitled to substantial

deference"), *cert. denied sub nom., Genius v. Hall*, 526 U.S. 1121 (1999). But this is only the

first part of the test. The petitioner is also required to demonstrate to the state court that

he was prejudiced by counsel's alleged errors — that is, he is required to show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694; *Scarpa*

*v. DuBois*, 38 F.3d at 8, 16. *See Bell v. Cone*, 122 S.Ct. at 1850. "A reasonable probability is

a probability sufficient to undermine confidence in the outcome." *Strickland v.*

*Washington*, 466 U.S. at 694. Finally, counsel's alleged blunders were not to be "judged

solely by the 'surrounding circumstances' of the representation, but, rather, [were to] be

judged [by the state court] in light of the whole record, including the facts of the case, the

trial transcript, the exhibits, and the applicable substantive law." *Scarpa v. DuBois*, 38

F.3d at 15. *See Matthews v. Rakiey*, 54 F.3d at 911.

21

In applying *Strickland* and its Massachusetts counterpart, *Commonwealth v. Saferian*, 366 Mass. 89, 96, 315 N.E.2d 878 (1974), in the case at bar, the Appeals Court concluded:

> We ... find no merit in the [petitioner]'s further claims that his trial counsel was ineffective because his arguments were not persuasive and that he failed to present exculpatory evidence or organize other evidence in such a way that jurors could understand its true import.  "[T]he basic trouble from the defense standpoint was weaknesses in the facts rather than any inadequacy of counsel." *Commonwealth v. Satterfield*, 373 Mass. 109, 111, 364 N.E.2d 1260 (1977). "Examining the alleged errors in light of the entire trial, we think that the presentation of the [petitioner]'s case was not prejudiced in any material manner." *Commonwealth v. Medina*, 20 Mass.App.Ct. 258, 259, 479 N.E.2d 738 (1985).  *See Commonwealth v. Boateng*, 438 Mass. 498, 513, 781 N.E.2d 1207 (2003).

Thus the petitioner utterly failed to prove that "but for" counsel's allegedly unprofessional errors, the result of the proceeding would have changed.  *Scarpa v. DuBois*, 38 F.3d at 8, 16.  The underlying facts of the petitioner's crimes and the compelling testimony of twenty-two credible victims doomed his case, not the actions of his trial counsel.  The state court adjudication of the petitioner's ineffective claim fully reflected Supreme Court law as applied by the First Circuit and no constitutional error occurred. *See Strickland v. Washington*, 466 U.S. at 694; *Scarpa v. DuBois*, 38 F.3d at 8, 16.[2]

---

[2] In any event, a fair reading of the transcripts proves that the jury was made aware at every opportunity of the theory of the defense that the petitioner was an earnest businessman working out of his field who had fallen on hard times and who lacked criminal intent to commit larceny.  Trial counsel hammered the theory from opening statement, through cross-examination of the Commonwealth's witnesses, direct examination of the petitioner's wife, and closing argument.  No amount of financial data or reports could have overcome the testimony of the individual witnesses who dealt with the petitioner or his joint venturer personally and recounted one after another nearly identical harrowing experiences.  A criminal conviction will not be reversed for ineffective assistance of counsel unless the defendant can show "that better work might have accomplished something material for the defense. " *Commonwealth v. Satterfield*, 373 Mass. 109, 115 (1977);*Commonwealth v. Pope*, 392 Mass.  493, 499 (1984).

**22**

## CONCLUSION

For the above-stated reasons the petition for writ of habeas corpus should be denied.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Annette C. Benedetto
Annette C. Benedetto
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
 BBO No. 037060

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the Electronic Case Filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on the date set forth below.

December 14, 2006          /s/ Annette C. Benedetto
                           Annette C. Benedetto