## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **FREDERIC LEPPER** | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Civil Action No. 04-11879-MLW |
| | ) |
| **LOIS RUSSO,** | ) |
| Respondent. | ) |
| | ) |

## SUPPLEMENTAL MEMORANDUM OF THE RESPONDENT

The respondent submits this supplemental memorandum in response to the Court's order of May 22, 2007, regarding the self-representation claim, requesting that the parties address whether the petitioner, Frederic Lepper, (i) violated the contemporaneous objection rule; (ii) was required by Massachusetts Procedural rules to raise his self-representation claim in a motion for a new trial; (iii) violated any other Massachusetts procedural rule; and (iv) whether any such rule is adequate to bar federal habeas review.

As discussed more fully below, a separate, self-representation claim is not properly before this Court as an independent, stand-alone ground for habeas corpus relief. The precise claim presented to the Massachusetts Appeals Court was that the trial judge abused his discretion in denying the petitioner's request for the appointment of substitute counsel. (Supp. Ans. Exh. 1 at 2, 57-59). In his brief to the Appeals Court, the petitioner did suggest in passing that the trial judge should have asked him whether he wanted to represent himself. (Supp. Ans. at 59). However this one sentence suggestion, which invoked a state not federal precedent, did not elevate this statement into a separate federal constitutional claim that was

2

recognizable as such by the Appeals Court.  The Appeals Court logically considered only the

substitute counsel issue which was the subject of a separate section in the brief (Supp. Ans.

Exh. 1 at 57-59) and deemed it procedurally defaulted since it was never presented to the trial

judge in his motion for a new trial when the petitioner alleged that he was denied the effective

assistance of trial because of his attorney's missteps.  The effective assistance of counsel and

denial of substitute counsel were closely related issues.  Where the petitioner claimed that his

defense attorney was unprepared or incompetent and that the trial judge abused his discretion

in refusing to grant a continuance to permit substitution of trial counsel, the petitioner should

have been included these grounds in his motion for a new trial in which he claimed ineffective

assistance of counsel.  *Commonwealth v. Price*, 17 Mass. App. Ct. 955, 956, 458 N.E. 2d 330

(1984).  It was basically unpreserved error which surfaced for the first time on appeal.  For

this reason the Appeals Court reviewed the matter only on a miscarriage of justice standard.

　　　As the record supports, a separate self-representation was not raised by the petitioner

at trial, in his motion for a new trial, in his appellate brief to the Massachusetts Appeals

Court, in his FAR application in the Supreme Judicial Court or even in his federal Petition for

Writ of Habeas Corpus.[1]  The abuse of discretion claim regarding substitute counsel was the

---

[1] Because the self-representation claim was never included in Ground Two of the federal habeas petition, the respondent did not move to dismiss the issue on exhaustion grounds.  (Petition, p. 5,  ¶ 12B).   The Petition did include in Ground Two the denial of a request for substitute counsel and denial of the effective assistance of counsel, issues that had been presented to the state appellate courts in two separate claims. (Cf. Supp. Ans. Exh. 1 at 43-57 with Petition, p. 5, ¶ 12B).  For this reason the respondent stated in his Answer that state remedies had been exhausted on the issues in the Petition.

3

focus and was the only claim pursued by the petitioner in state court.  The brief comment

alleging reversible error because the judge did not sua sponte conduct a colloquy to see if

Lepper wanted to proceed pro se does not elevate this assertion into a full blown issue.   The

passing reference cannot be spun off into a new, free-wheeling independent claim of denial of

federal constitutional right to proceed pro se.

In any event, putting aside the procedural issues, there is no merit to the substitute

counsel and self-representation claims.  The trial judge's denial of substitute counsel at trial

was discretionary.    The subsidiary argument on self-representation was without foundation;

the petitioner never expressed any interest whatsoever in representing himself and the trial

judge was in no way obliged to broach the subject.   The petitioner was upset at the beginning

of trial because the numerous consumer protection complaints filed against him were being

handled in a criminal not a civil proceeding.  He did express displeasure with his attorney and

asked for a continuance and a mistrial during the trial.  The trial judge patiently inquired each

time about the basis for his complaints and determined that defense counsel was prepared.

Lepper never indicated a desire to waive counsel and proceed pro se and there is no Supreme

Court precedent that mandated that a trial judge initiate such a discussion under these

circumstances.

## FACTUAL BACKGROUND

The actual events at trial present the issues in a proper context.   On the first day of

trial, just prior to jury selection, the trial judge asked the petitioner if there was anything he

4

wished to say.  The petitioner addressed the court. (Tr. I Morning:14).[2]

> **Mr. Lepper:** Your Honor, I would just like the record to reflect that I'm not satisfied with my present counsel in this trial.  We haven't had enough time to prepare for trial.  There are motions that I wanted entered in this trial that were not.  I'm very uncomfortable with what's going on.  There has been a lot of back and forth, back and forth.  He said, she said.  Do this deal, do that deal.  I'm confused because I thought we had a tentative plea agreement as of last week.  Everybody was in favor of it and we weren't going to go to trial, and I'm confused about what is happening.

> **The Court:** You shouldn't be confused.  I'm a trial judge and I know nothing about what went on with this case.  I did something with the motion back in April.  There was a motion to suppress.  I was the judge, I heard that case and I ruled on it.  As far as a plea is concerned, I am not interested in pleas.  I am a trial judge.  So whatever transpired weeks ago, I know nothing about it.  So if your complaint is that you wanted to plead out this case and you were unable to do so, I can't address that.  The only thing before me is I want to make certain that Mr. McEvilly is prepared to go to trial.  If you have any fault with that, get in on the record so that I can intelligently decide that.  That's all I am trying to do, okay?

> **Mr. Lepper:** Yes, sir.  I wanted a motion filed about the venue of the case that's here in Worcester County from the outside states of Maine, Vermont and New Hampshire.  I was in contact prior to being arrested with the people in those states  with the Attorney General and the attorneys and we were trying to work something out.  In Maine, there's a gentleman there and a lady that I spoke to in the AG's office who said it wasn't a criminal matter, it was more civil to her.  Now I'm being tried criminally.  Were the venue changed, I would not be charged criminally.

---

[2] **The respondent submitted six volumes of trial transcripts to this Court in the Supplemental Answer.** <u>See</u> **Trial Transcripts, September 9- Tr. I -Morning; September 9- Tr. I -Afternoon; September 10-Tr. II; September 13-Tr. III; September 14-Tr. IV; September 15-Tr. V.**

**Unfortunately the transcript relevant to Ground Two, September 9-Tr. I- Morning, was inadvertently inserted in the wrong order and appears in Volume 3 of 3 in the next to last section.  The respondent's counsel regrets any inconvenience caused by this error and will file a duplicate of the particular transcript if the Court requests.**

5

The Court: Is that it?

Mr. Lepper:   Yes, sir.

The Court: Mr. McEvilly, are you ready to try the case, sir?

Mr. McEvilly: Yes.  I had forgotten to file a motion to continue concerning statements that I had received on the 7th and didn't look at until the 8th because I was at the Worcester County House of Correction on the 7th and I had to go see Mr. Lepper last night which is concerning the statement of Mr. Buddy Hill who is a co-defendant and is going to testify against Mr. Lepper, as I understand it.  And because of the late information being received, I wanted to address the Court on that.

The Court: I have in my hand a document entitled, "The Defendant Requests the Court to Continue the Above Matter and Reasons Therefor."  He says he was provided with a statement of September 7, 1999.  What was the statement provided on September 7, 1999.

The prosecutor then stated that he had forwarded the co-defendant's statement to defense counsel "the day it was finished" and there was no significant new information in it anyway. (Tr. I Morning:17).  The court then denied the motion to continue and ordered the clerk to "bring the jury down and get going." (Tr.I Morning: 18).

Just after jury selection, defense counsel asked on behalf of the petitioner  if the judge would consider accepting a disposition. (Tr. I Morning: 56).  The judge said no, stating that he doesn't get involved in dispositions and will just try the case.

After a recess, the judge clarified his position saying that he was not denying the petitioner the opportunity to plead guilty if he wants to do so but just reiterating his position that he would not be bound by any recommendation or become involved in plea negotiations. (Tr. I Morning 57).

**6**

The afternoon of the first day of trial the petitioner again voiced his displeasure at his

defense counsel. (Tr. I Afternoon 4).

> **Mr. Lepper** : Me and my attorney are fighting like cats and dogs over this
> case.  He keeps insisting that the best thing to do is accept the deal that the
> state has recommended.  I asked him to bring up the fact that when Mr.
> Murray sat there and said he got a plan, and it shows clearly that they
> confiscated it, blueprints for George Murray. I went to George Murray's place.
> I took the contractor down to the site.  They weren't aware I was coming down
> to the site.  They weren't aware I was coming down to pull the permit, and my
> attorney refused to say that. Your Honor, I am getting really worried here.  It's
> ridiculous.  I ask for a mistrial.

> **The Court**: Sir, you can move all you want, but the case is going to proceed to a
> verdict.  My assessment of Mr. McEvilly, he's doing a good, workmanlike job
> with a very, very difficult case and he handled that witness, Mr. Murray, in a
> very delicate manner. (Tr.I: Afternoon 4-5).

On the second day of trial, defense counsel asked the trial judge if Mr. Lepper could

address the Court.  The judge stated that the jury was not present and Mr. Lepper could say

anything he wished. (Tr. II 15).

> **Mr. Lepper**: Thank you, your Honor. I would like to move for a mistrial on this.

> **The Court**: Why?

> **Mr. Lepper**: : I don't appreciate that the counsel I have here – we are bumping heads.
> Yesterday I was in the holding cell. He told me I was a bullshitter and guilty.

> **The Court**: I didn't hear what you said.

> **Mr. Lepper**: Yesterday in the holding cell he came back to me with an offer from the
> AG's office saying three to five –

> **The Court**: Sir, look it, please –

> **Mr. Lepper**: I understand, your Honor

.

7

**The Court**: But let me just tell you something. I don't get involved in any offers or acceptance or anything like this. I am the trial judge.

**Mr. Lepper** : Yes, sir.

**The Court**: This case will go to a verdict. When the jury comes back with its verdict, then I will impose an appropriate sentence, but I am not involved in plea negotiations. I don't even want to hear about them, okay? So I don't want you to talk about three to five or ten to fifteen of anything else. That's none of my concern. Go ahead.

**Mr. Lepper**: My concern is that he told me that I was a bullshitter and I was guilty. I don't appreciate that coming from my counsel and I don't have proper counsel in this case.

**The Court**: Anything else?

**Mr. Lepper**: No, sir.

**The Court**: My assessment of Mr. McEvilly, he's doing a good workman-like job in this case. As I said yesterday, it's tough case to defend. He has to handle these people who feel that they were defrauded, and they all seem to be people who were very, very vulnerable to such a scheme, if in fact, one existed, and he has to be delicate. That's my assessment. The manner in which he's conducting the trial, I think he's doing a good job, from what I observed.

**Mr. Lepper**: I don't want him for counsel.

**The Court**: Sir, your request for a mistrial is denied. Bring down the jury, please. (Tr. II at 15-17.

Finally, at the beginning of the afternoon session on the second day of trial, defense counsel indicated that his client wanted to address the court. The petitioner told the court that he was not happy with his lawyer. (Tr. II at 158).

**Mr. Lepper**: Once again as we go on the record I'm saying we are not happy with the representation that my counsel is giving me, that I don't wish to have him represent me in this matter that he representing me on. He's not prepared.

**The Court**: Well, I can point out, Mr. Lepper, this is your third lawyer. And for the

8

record–

<u>Mr. Lepper</u>: The first lawyer told the Court I cannot pay him and he withdrew and that was not a true fact.  I didn't have any say - so letting him withdraw.  He withdrew himself.  He lied to the Courts, and the Court conspired to let him withdraw, that's asking me if I could afford an attorney.

<u>The Court</u>: Mr. Lepper - what the record indicates and I can only go by the record that your first lawyer was Peter Ettenberg.

<u>Mr. Lepper</u>: Correct.

<u>The Court</u>: Mr. Ettenberg, for whatever reason, no longer wanted to represent you, and with your approval he was released from the case.  The Office of Public Counsel –

<u>Mr. Lepper</u>: It was not my approval, your Honor.  I wasn't even there when he withdrew from the case. Okay? I was wheeled in there a couple days later and introduced to another gentleman called Sean Capplis.

<u>The Court</u>: But in any event this is your third lawyer and now for the record I just want to make certain observations.  I notice that during the course of the trial, you pass many, many notes to Mr. McEvilly.  It appears that he's leaning over with you, and he converses with you both during the direct examination of the various witnesses by the Commonwealth and even before, during and after he cross-examines the various witnesses.  At least it appears to me that he always gets your consent before he agrees to the admission of any of the objections or exhibits that have been admitted into evidence into evidence.  So in my opinion, from what I have observed, he doing a good job in a workman-like manner and doing he best he can for you with a difficult case. (Tr. II:158-159).

Thereafter defense counsel filed a handwritten motion to withdraw from the case,

stating that the matters brought to the attention of the court by Mr. Lepper were not true and

that the petitioner was uncooperative and not assisting counsel in the trial. (Tr. II: 160).  The

judge denied the motion, saying that the case is going to go to a verdict. (Tr. II: 161).

**I.    THE EVOLUTION OF GROUND TWO INDICATES THAT THE SELF-REPRESENTATION CLAIM IS NOT PROPERLY BEFORE THIS COURT**

Tracing the genesis of the self-representation claim reveals that the focus of the claim actually presented to the appellate courts has shifted and a stand alone self-representation claim was never clearly articulated.  The current version of Ground Two is two-pronged - it alleges that the trial judge denied his Sixth Amendment rights by forcing the petitioner to go to trial with unwanted representation and not offering him the opportunity to represent himself (Pet. Mem. at 10-13).

The actual claim has undergone a transformation since it first surfaced in the petitioner's Brief For the Defendant on Appeal From Worcester County Superior Court. (Supp. Ans. Exh. 1 at 57-59).  There Lepper argued only that the trial judge abused his discretion in denying his request for the appointment of substitute counsel.  (Supp. Ans. Exh. 1 at 57).[3]  He acknowledged that the Sixth Amendment guaranteed the right to the effective assistance of counsel but did not mandate a meaningful attorney-client relationship.  *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).  Beyond making that point, the thrust of the claim was that the trial judge abused his discretion.  In his brief, he did not assert that a request for change of counsel on the eve of trial was a matter of federal constitutional law.  Lepper's argument was based entirely on the trial judge's alleged abuse of discretion under Massachusetts precedent in denying the request.   In the last sentence of the relevant section

---

[3] The petitioner framed the issue as follows: "The Judge Committed An Abuse of Discretion in Denying Lepper's Requests for the Appointment of Substitute Counsel." (Supp. Ans. Exh. 1 at 57).

10

of the brief, Lepper opined that it was "reversible error" for the judge to fail to hold a

colloquy to determine whether his comment- "I don't want him for counsel" -should have

been construed as a request to proceed pro se. (Supp. Ans. Exh. 1 at 59). That was the only

reference to a defendant's right of self-representation and the case cited by the petitioner for

support was a 1974 Massachusetts case based on state constitutional grounds only. [4]

Faced with the claim that the judge abused his discretion by denying a request for

substitute counsel, the Appeals Court focused solely on the only argument clearly presented

in the brief by the petitioner.

> 6. Other claims. The defendant claims for the first time on appeal that the trial
> judge abused his discretion in denying his request for new counsel. The defendant
> twice informed the trial judge that he and his trial counsel disagreed over trial strategy
> and that he no longer wanted him as his attorney. "A motion to discharge counsel,
> when made on the eve of trial, or on the day on which trial is scheduled to begin, 'is a
> matter left to the sound discretion of the trial judge.' " *Commonwealth v. Tuitt*, 393
> Mass. 801, 804, 473 N.E.2d 1103 (1985), quoting from *Commonwealth v. Moran*, 388
> Mass. 655, 659, 448 N.E.2d 362 (1983)(trial judge has discretion to change counsel,
> but only after letting the defendant articulate reasons for the request). The defendant
> was given the opportunity to articulate the reasons for his dissatisfaction, thereby
> allowing the trial judge to decide on an informed basis that trial counsel was doing a
> satisfactory job and would not be removed. There was no abuse of discretion in
> denying the request for new counsel and no substantial risk of a miscarriage of justice.

*Commonwealth v. Lepper*, 60 Mass. App. Ct. 36, 53-54, 798 N.E. 2d 1030 (2003).

---

[4] **Lepper invoked *Commonwealth v. Mott*, 2 Mass. App. Ct. 47, 52 (1974), which was based on a state constitutional right to conduct one's own defense and established inter alia three factors limiting that right, i.e., the request to proceed without counsel must be unequivocal, asserted before trial, and made knowingly, intelligently and not for an ulterior motive. *Commonwealth v. Mott*, 2 Mass. App. Ct. at 51-52. *Mott* predated *Faretta v. California*, 422 U.S. 806 (1975), which recognized the federal constitutional right to self-representation under the Sixth Amendment. *See Tuitt v. Fair*, 822 F. 2d 166, 174 (1987).**

11

In his Application for Leave to Obtain Further Appellate Review (ALOFAR), Lepper again focused solely on the trial judge's abuse of discretion in denying his requests for the appointment of substitute counsel. (Supp. Ans. Exh. 5 at 18-19).  He omitted any mention of the right of self-representation. [5]

Lepper then filed a Petition for Writ of Habeas Corpus in which he merged two separate but related issues.  He claimed that (1) he was denied a request for substitute counsel and (2) ultimately the effective assistance of counsel. [6] There was no mention in the Petition whatsoever that he was denied his right to self-representation in violation of the Sixth Amendment.

However, it was in his Memorandum of Law In Support of Petition for Writ of Habeas Corpus that Lepper recast the issue.  He dropped the ineffective assistance of counsel claim detailing the various missteps of defense counsel that had been presented in his motion for a new trial and reviewed by the state's appellate courts on Sixth Amendment grounds.  He now focused on the denial of his request for substitute counsel (which had been presented to the

_____

[5] Because the petitioner dropped any mention of a right of self-representation in the ALOFAR,  the claim is also unexhausted.  *See Mele v. Fitchburg District Court*, 850 F.2d 817, 820 (1st Cir. 1988)( It is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present – or do his best to present – the issue to the state's highest tribunal).

[6] The petitioner stated in the Supporting Facts that the judge denied four separate requests for a change of counsel based on breakdown in communication and lack of preparation.  At trial defense counsel failed to object to the prosecutor's closing argument, failed to introduce exculpatory evidence, failed to marshal existing evidence into a format the jury could understand, failed to move to strike extraneous testimony, failed to object to erroneous instructions and requested that the defendant be adjudicated a common and notorious thief.  (Petition, p. 5, ¶ 12B)

12

Massachusetts Appeals Court as an abuse of discretion only), and the denial of the right to

self-representation (which had never been sought or fairly presented on Sixth Amendment

grounds.)   The substitute counsel issue has morphed into an new, unexhausted self-

representation claim that is not properly before this Court.

II.    THE SUBSTITUTE COUNSEL ISSUE WITH ITS SELF REPRESENTATION
       SUGGESTION WAS PROCEDURALLY DEFAULTED.

       As the transcript reveals the petitioner never actually asked the trial judge to appoint

substitute counsel.  He requested a continuance on the first day of trial and then a mistrial

later in the proceedings.   It was only on appeal that he articulated his legal view that it was

an abuse of discretion for the trial judge not to appoint a new, fourth lawyer to represent him

in the face of his eleventh-hour complaints about defense counsel.  (Supp. Ans. Exh. at 57-59).

       It is well settled in Massachusetts that a defendant cannot assert for the first time at

the appellate level a ground or argument not presented to the trial judge.  *See*

*Commonwealth v. Fleury-Ehrhart*, 20 Mass. App.Ct. 429, 438, 480 N.E.2d 661, 667(1985);

*Commonwealth v. Lovett*, 374 Mass. 394, 403, 372 N.E.2d 782 (1978);  *Commonwealth v.*

*Gray*, 357 Mass. 771, 771-772, 257 N.E.2d 924 (1970);  *Commonwealth v. Flynn*, 362 Mass.

455, 472, 287 N.E.2d 420 (1972);  *Commonwealth v. Johnson*, 371 Mass. 862, 867, 359 N.E.2d

1286 (1977);  *Commonwealth  v. Clark*,  20 Mass. App. Ct. 962, 963, 480 N.E.2d 653(        ).

Where issues raised on appeal have not been raised below, the applicable standard of review

was whether there existed a substantial risk of a miscarriage of justice. *Commonwealth v.*

*Moffett*, 383 Mass. 201, 418 N.E.2d 585 (1981).  Unpreserved error can be consequential only

13

if there is a substantial risk of a miscarriage of justice. *Commonwealth v. Freeman*, 352

Mass. 556, 563-564, 227 N.E.2d 3 (1967). The Massachusetts Appeals Court may consider

issues on appeal not raised at trial, but their power to do so is rarely exercised, and is

exercised only in response to a serious and obvious error creating a substantial risk of a

miscarriage of justice. *Commonwealth v. Freeman*, 352 Mass. 556, 563-564, 227 N.E.2d 3

(1967); *Commmonwealth v. Pares-Ramirez*, 400 Mass. 604, 609, 511 N.E.2d 344 (1987).

Even if the substitute counsel issue was not in procedural default, the self-

representation matter was clearly raised at trial.   It is abundantly clear that there was no

contemporaneous objection or even hint to the trial judge that a self-representation claim was

in play.  There was no indication at all that the petitioner wished to waive counsel and proceed

pro se.   It was only on appeal that the petitioner mentioned the self-representation aspect of

the claim and only in passing as an afterthought premised on state constitutional case.   This

issue should have been raised straight out at trial or proffered in his motion for a new trial

with a supporting affidavit along with his related claim of ineffective assistance of trial

counsel.  *See Commonwealth v. Price*, 17 Mass. App. Ct. 955, 956, 458 N.E. 2d 330 (1984).

The petitioner gave the trial judge no hint of the self-representation argument he would later

suggest on appeal and the Massachusetts Appeals Court properly declined to consider it at

all.  *See Commonwealth v. Lett*, 393 Mass. 141, 144, 470 N.E.2d 110 (1984); *Commonwealth*

*v. Marchionda*, 385 Mass. 238, 242, 431 N.E.2d 177 (1982).

As argued in previous filings, the Appeals Court settled the substitute counsel issue on

an independent and adequate state law ground.  The "procedural default rule" reflects the

14

Supreme Court's view that, in the interests of comity and federalism, a habeas court should

"'not review a question of federal law decided by a state court if the decision of that court

rests on a state law ground that is independent of the federal question and adequate to

support the judgment.'" *Boutwell v. Bissonnette*, 66 F. Supp. 2d 243, 245 (D. Mass. 1999)

(quoting *Coleman v. Thomson*, 501 U.S. 722, 729 (1991)). As a consequence of this rule,

"state prisoners whose claims are dismissed by state courts for procedural reasons cannot

gain access to federal habeas review." *Id.* (citations omitted).

III.    THERE IS NO BASIS FOR FEDERAL HABEAS CORPUS RELIEF.

Putting aside issues of procedural default and issue shifting, there is no merit to the

petitioner's argument that he was denied his Sixth Amendment rights by the trial judge who

declined to appoint new counsel or did not initiate a colloquy on self-representation.

As the petitioner acknowledged in his brief to the Massachusetts Appeals Court, the

trial judge's denial of his motion to continue the trial on the first day of trial and for a mistrial

on the second day of trial is measured by the abuse of discretion standard. (Supp. Ans. Exh. 1

at 57-59). While the Sixth Amendment guarantees the right to effective assistance of

counsel, a trial court has extensive discretion over last minute requests for continuances

made on the eve of or during trial to secure substitute counsel. *Tuitt v. Fair*, 822 F. 2d 166,

171 (1st Cir. 1987). There is no clearly established Supreme Court precedent that sets forth a

right to substitute counsel. *Asadoorian v. Ficco*, 2004 WL 1932753 (D. Mass.)). Although a

defendant must be permitted to present the reasons for his dissatisfaction with his attorney,

the judge retains considerable power to discourage last-minute tactics which appear likely to

15

delay the commencement of trial. *Commonwealth v. Jackson,* 376 Mass. 790, 796 (1978).

*See United States v. Todisco,* 667 F.2d 255, 261 (2d Cir.1981), *cert. denied,* 455 U.S. 906, 102

S.Ct. 1250, 71 L.Ed.2d 444 (1982) (court should "be wary of eleventh hour requests for new

counsel").   A defendant's freedom to change counsel is significantly more restricted during

trial than it is before trial has commenced. *Commonwealth v. Jackson*, 376 Mass. at 797.  *See*

*Morris v. Slappy*, 461 U.S. at 11-12.   The trial judge retains considerable power to discourage

last-minute shifts in representation that threaten to delay  the commencement of trial.

*Commonwealth v. Jackson*,  376 Mass. at 796.

The Supreme Court has noted that "[t]rial judges necessarily require a great deal of

latitude in scheduling trials.  Not the least of their problems is that of assembling the

witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels

against continuances except for compelling reasons. Consequently, broad discretion must be

granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence

upon expeditiousness in the face of a justifiable request for delay' violates the right to the

assistance of counsel." *Morris v. Slappy* 461 U.S. 11-12.

The instant petitioner was permitted to present the reasons for his dissatisfaction with

his attorney.  *Commonwealth v. Moran*, 388 Mass. 655, 659, 448 N.E.2d 362 (1983).  There

were several colloquies during trial between the petitioner and the trial judge which indicate

that the court fully explored the petitioner's  various complaints regarding his attorney and

determined that the attorney was prepared to try the case and effectively represent the

petitioner.   The petitioner never affirmatively requested substitute counsel or asked to

16

proceed pro se although he did seek a continuance and a mistrial based on his complaints
which was denied after the judge questioned him thoroughly about his reasons. The
petitioner's efforts to stop the trial can be construed not as a reflection of his attorney's
competence but of the petitioner's extreme reluctance to deal with his matter in a criminal
context in which he risked imprisonment. The petitioner was also concerned with plea
negotiations which were apparently unsuccessful. The trial judge's decision to proceed
forthwith with the trial with fully prepared appointed counsel was a proper exercise of
discretion.

The court was not required to appoint substitute counsel because the petitioner and his
attorney had a disagreement or exchanged heated words. The Sixth Amendment right to
counsel does not guarantee that a defendant will develop rapport with his attorney. *Morris v.
Slappy* 461 U.S. 11-12. As the First Circuit acknowledged in its supervisory role over the
district courts, a defendant's own loss of confidence in his attorney is not a sufficient reason
to delay a trial in order to appoint substitute counsel. *Tuitt v. Fair*, 822 F. 2d at 173. The First
Circuit recognized that "a purely subjective standard would convert the requirement of good
cause [to substitute counsel] into an empty formality since the defendant would be entitled to
demand a reassignment of counsel simply on the basis of a 'breakdown in communication'
which he himself induced." *Tuitt v. Fair,* 822 F. 3d at 173, quoting *McKee v. Harris*, 649 F. 2d
927, 932 (2d Cir. 1981).

As noted, the self-representation claim was buried in the substitute counsel issue and
not presented to the Massachusetts Appeals Court as a separate federal constitutional issue.

17

While not a proper subject for this inquiry, it is clear that the petitioner's claim that he was denied the right to proceed pro se is without merit.  Without citing any federal constitutional support, the petitioner contended that the trial judge should have held a colloquy to determine whether his statement - "I don't want him for counsel" - was a request to proceed pro se. (Supp. Ans. Exh. 1 at 59; Pet. Mem. at 13).  The Sixth Amendment guarantees the right to proceed pro se, *Faretta v. California*, 422 U.S. 806 (1975), but does not impose on the trial judge the legal obligation to initiate the inquiry or inject the issue into a trial.  A defendant's demand to proceed pro se must be timely and unequivocal. *Commonwealth v. Mott*, 2 Mass. App. Ct. at 1217; *United States v. Kizer*, 569 F. 2d 504, 507 (9th Cir. 1978).   The right to self-representation is one which the defendant must clearly and unequivocally assert before trial...this is necessary because the trial court faces the difficult related problem of ascertaining whether there is an intelligent and voluntary waiver of the right to counsel." *United States v. Bennett*, 5639 F. 2d 45, 50 (10th Cir. 1976).  The Supreme Court noted the dangers and disadvantages of self-representation when it mandated that the record must show a knowing and intelligent waiver of the right to counsel so that the defendant is aware of what he doing and his choice it made with eyes open. *Faretta v. California*, 422 U.S. at 835.

The constitutional right to self-representation necessarily entails a waiver of the constitutional right to counsel since a defendant cannot enjoy both rights at trial. *Commonwealth v. Tuitt*, 393 Mass. 801, 807 (1985). *See Tuitt v. Fair*, 822 F. 2d at 174. The right to represent oneself and the right to counsel are available only in the "disjunctive." *Commonwealth v. Tuitt*, 393 Mass. at 807,  quoting *United States v. Halbert,* 640 F. 2d 1000,

18

1009 (9th Cir. 1981). There was no indication in any of the petitioner's statements that he was willing to give up the "traditional benefits associated with the right to counsel" and wanted to take on the task of representing himself. *Faretta v. California*, 422 U.S. at 835.

Under Massachusetts precedent, a request to proceed pro se should be asserted prior to trial. *Commonwealth v. Scott*, 2 Mass. App. Ct. at 52. Once the trial has begun with the defendant represented by counsel, his right thereafter to discharge his lawyer and to represent himself is sharply curtailed. *Lamoureux v. Commonwealth*, 353 Mass. 556, 560 (1968). Here there was no request at all to proceed pro se. The claim fails on all counts- there was no timely, unequivocal request to proceed pro se and no indication whatsoever that the petitioner was willing to waive the all-important right to counsel.

## <u>CONCLUSION</u>

For the reasons stated above, the respondent opposes the petition for writ of habeas corpus and submits that the petition should be denied.

Respectfully submitted,

MARTHA COAKLEY
ATTORNEY GENERAL
<u>/s/ Annette C. Benedetto</u>
Annette C. Benedetto
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
BBO No. 037060

19

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the Electronic Case Filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on the date set forth below.


Dated: June 28, 2007                    /s/ Annette C. Benedetto
                                        Annette C. Benedetto