UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
FREDERIC LEPPER,               )
        Petitioner             )
                               )
            v.                 )  C.A. No. 04-11879-MLW
                               )
LOIS RUSSO,                    )
        Respondent             )
```

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.

I. INTRODUCTION                         August 31, 2007

Petitioner Frederic Lepper seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254. He raises three grounds for relief. They are denial of the right: (1) to have a jury determine facts that may increase the statutory maximum sentence under the Fifth Amendment; (2) to self-representation or substitute counsel under the Sixth Amendment; and (3) to effective assistance of counsel under the Sixth Amendment. The court ordered further briefing on the second ground. <u>See</u> May 22, 2007 Mem. and Order. In its submission, the respondent argued that the petitioner's self-representation claim is not exhausted. Without deciding the exhaustion issue, the court ordered the petitioner to seek to show cause why the petition should not be dismissed as unexhausted or, in the alternative, to request that any unexhausted claims be deleted. June 29, 2007 Mem. and Order. The petitioner has asked that the court delete any unexhausted claims.

For the reasons discussed in this Memorandum, the self-

1

representation claim is being deleted because it is not exhausted and the remaining claims are not meritorious. Therefore, the petition is being denied.

II. BACKGROUND

Absent "clear and convincing evidence" to the contrary, a habeas court must presume correct all state courts' findings of fact. See 28 U.S.C. §2254(e)(1); Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000). As explained by the Massachusetts Appeals Court, the petitioner was convicted by a jury on 23 separate indictments of larceny by false pretenses under M.G.L. c. 366, §30, and other indictments not at issue here. See Commonwealth v. Lepper, 60 Mass. App. Ct. 36, 38 (App. Ct. 2003). The indictments charged the petitioner with stealing, from 23 different customers, deposits for construction that generally never commenced. Id. at 38-39. In the course of each larceny, which occurred throughout a one year period, the petitioner had "unique" interactions with each victim. Id. at 39.

Under M.G.L. c. 266, §40, the trial judge adjudicated the petitioner a common and notorious thief, and sentenced him to ten to fifteen years in prison as a consolidated punishment for all of the underlying larceny convictions. Id. at 38.

Throughout the trial, the petitioner complained about his court-appointed attorney. His first complaint arose during the first day of trial just prior to jury selection, when he asked for

a continuance because he was not satisfied with counsel's preparation and his counsel's failure to move for a change of venue. <u>See</u> Sept. 9, 1999, Morning Tr. I at 14, 15. He also asserted that he was confused because a plea bargain had fallen through. <u>Id.</u>[1]

The trial judge responded that neither the petitioner's confusion nor plea bargaining were relevant. <u>Id.</u> at 14-15. He instructed the petitioner to focus only on defense counsel's preparedness to go to trial and to get on the record any complaints on that issue. <u>Id.</u> at 15.[2] The judge then allowed the petitioner to

---

[1] The petitioner stated:

I am not satisfied with my present counsel in this trial. We haven't had enough time to prepare for trial. There are motions that I wanted entered in this trial that were not. I'm very uncomfortable with what's going on. There has been a lot of back and forth, back and forth. He said, she said. Do this deal, do that deal. I'm confused because I thought we had a tentative plea agreement as of last week. Everybody was in favor of it and we weren't going to go to trial, and I'm confused about what is happening.

Sept. 9, 1999, Morning Tr. I at 14. When given an opportunity to discuss his concerns further, he explained that "I wanted a motion filed about the venue of the case[.]" <u>Id.</u> at 15.

[2] The judge stated:

You shouldn't be confused. I'm a trial judge and I know nothing about what went on with this case. *** As far as a plea is concerned, I am not interested in pleas. *** The only thing before me is I want to make certain that [defense counsel] Mr. McEvilly is prepared to go to trial. If you have any faults with that, get it on the record so that I can intelligently decide that. That's all I am trying to do, okay?

express his concerns and questioned defense counsel directly about his preparation for trial. Id. at 15-18. In reply, the petitioner complained that a motion to change venue had not been made. Id. at 15. Defense counsel maintained that he was ready to go to trial. Id. at 16. The judge denied the motion to continue. Id. at 18.

Later that afternoon, after the jury was selected, the petitioner again complained, and requested a mistrial. Sept. 9, 1999, Afternoon Tr. I at 4. He explained that he disagreed with his attorney's recommendation to take a plea and that his attorney refused to cross-examine a witness in a manner that the petitioner instructed. Id.[3] After listening to the petitioner, the judge denied the request for a mistrial. He explained that defense counsel was "doing a good, workman-like job with a very, very difficult case," and "handled that witness...in a very delicate

_____

Sept. 9, 1999, Morning Tr. I at 14-15.

[3] The petitioner stated:

Me and my attorney are fighting like cats and dogs over this case. He keeps insisting that the best thing to do is accept the deal that the state has recommended. I asked him to bring up the fact that when Mr. Murray sat there and said he got a plan, and it shows clearly that they confiscated it, blueprints made for George Murray. I went to George Murray's place. I took the contractor down to the site. They weren't aware that I was coming down to pull the permit, and my attorney refused to say that.

Your honor, I am getting really worried here. It's ridiculous. I ask for a mistrial.

Sept. 9, 1999, Afternoon Tr. I at 4.

manner." Id. at 4-5.

The next day, the petitioner repeated his request for a mistrial on the grounds that he was "bumping heads" with his counsel, who had privately called him "a bullshitter and guilty." Sept. 10, 1999 Tr. II at 15.[4] The judge again listened, ensured that there was no further complaints, and denied the request. He explained:

> My assessment of [counsel], he's doing a good workman-like job in this case. As I said yesterday, it's a tough case to defend. He has to handle these people who feel that they were defrauded, and they all seem to be people who were very, very vulnerable to such a scheme, if, in fact, one existed, and he has to be delicate. That's my assessment. The manner in which he's conducting the trial, I think he's doing a good job, from what I observed.

Id. at 17. The petitioner replied, "I don't want him for counsel." Id. Construing the statement as part of the motion for mistrial, the judge explained, "Sir, your request for a mistrial is denied." Id.

Later that afternoon, the court allowed the petitioner to

---

[4] The petitioner stated:

I would like to move for a mistrial on this.
***
I don't appreciate that the counsel I have here - we are bumping heads. Yesterday I was in the holding cell. He told me I was a bullshitter and guilty.
***
My concern is that he told me that I was a bullshitter and I was guilty. I don't appreciate that coming from my counsel and I don't have proper counsel in this case.

Sept. 10, 1999 Tr. II at 15.

repeat his complaint. The petitioner stated:

> Once again as we go on the record I'm saying we are not happy
> with the representation that my counsel is giving me, that I
> don't wish to have him represent me in this matter that he's
> representing me on. He's not prepared.

Sept. 10, 1999 Tr. II at 158. The judge responded:

> [T]his is your third lawyer, and now for the record, I just
> want to make certain observations.
>
> I notice that during the course of the trial, you pass many,
> many notes to [defense counsel]. It appears that he's leaning
> over with you, and he converses with you both during the
> direct examination of the various witnesses by the
> Commonwealth and even before, during and after he cross-
> examines the various witnesses. At least it appears to me that
> he always gets your consent before he agrees to the admission
> of any of the objections or exhibits that have been admitted
> into evidence. So in my opinion, from what I have observed,
> he's doing a good job in a workman-like manner and doing the
> best he can for you with a difficult case.

Id. at 159.

     As the judge was speaking, defense counsel submitted a written

motion to withdraw. Id. at 160. The judge asked counsel to read the

grounds for his motion into the record, and counsel explained that

the complaints about him by the petitioner were not true and that

the petitioner was not cooperating with counsel. Id. The judge

denied the motion. Id. at 160.

     On appeal, the petitioner alleged that the judge abused his

discretion by not appointing substitute counsel or evaluating

whether the petitioner wished to proceed pro se. See Pet.'s Br. to

Appeals Court at 2. The Appeals Court held that the substitute

counsel claim was procedurally defaulted, but did not address the

self-representation claim. See Lepper, 60 Mass. App. Ct. at 53-54.

The petitioner also argued to the Appeals Court that the trial court denied him his right to a jury by adjudging him a common and notorious thief without a jury finding that he had been convicted of three distinct larcenies. The Appeals Court rejected the claim and explained that a jury determined the facts with respect to each indictment beyond a reasonable doubt and that there was therefore no violation of the petitioner's right to a jury trial. Id. at 48. Moreover, each larceny was distinct because the monies were taken from different victims through distinct acts. Id. at 48 n.6. The court also reasoned that there could be no violation of the petitioner's right to a jury trial because the consolidated sentence of ten to 15 years was far below the 115 year maximum for which he was eligible. Id. at 48-49. The court explained that judicial fact finding is improper only where it is necessary to increase the maximum statutory penalty. Id.

The petitioner sought and was denied further appellate review from the Massachusetts Supreme Judicial Court (the "SJC"). The petition to the SJC did not include the self-representation claim.

III. DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), establishes the deferential standard of review applied by a habeas court for the review of a state court

7

judgment that is rendered "on the merits." <u>See</u> 28 U.S.C. §2254(d).[5]
On review of such judgments, the court may issue a writ of habeas
corpus only if the judgment was "contrary to clearly established
law as established by the Supreme Court," or where the judgment
provided an "unreasonable application of Supreme Court precedent."
28 U.S.C. §2254(d)(1).

A state court decision is "contrary to" clearly established
law in only two circumstances: (1) where "the state court applies
a rule that contradicts the governing law set forth [in United
States Supreme Court] cases;" or (2) where "the state court
confronts a set of facts that are materially indistinguishable from
a decision of [the Court] and nevertheless arrives at a result
different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529
U.S. 362, 405-06 (2000).

An application is unreasonable only "if the state court

_____

[5] Section 2254 states:

An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a state court
shall not be granted with respect to any claim that was
adjudicated on the merits in State court proceedings unless
the adjudication of the claim--
    (1) resulted in a decision that was contrary to, or
    involved an unreasonable application of, clearly
    established Federal law, as determined by the Supreme
    Court of the United States; or
    (2) resulted in a decision that was based on an
    unreasonable determination of the facts in light of the
    evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

8

identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Williams</u>, 529 U.S. at 407-09, 413. The fact that the state court merely may have reached an incorrect result is not sufficient; the result must be unreasonable. <u>See</u> <u>McCambridge v. Hall</u>, 303 F.3d 24, 36-37 (1st Cir. 2002) (<u>en</u> <u>banc</u>). Where, for example, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied. <u>Id.</u> at 37.

Under these standards, the petitioner's claims fail.

A. <u>Trial By Jury</u>

Although he does not deny that he was convicted on twenty-three counts of larceny, the petitioner argues that he was denied his right to trial by jury because the trial judge sentenced him as a "common and notorious thief," pursuant to M.G.L. c. 266, §40, without a finding by a jury that he had been convicted of three distinct larcenies. Under §40, "whoever is convicted at the same sitting of the court...of three distinct larcenies, shall be adjudged a common and notorious thief[.]" M.G.L. c. 266, 40.[6] While

_____

[6] M.G.L. c. 266, §40 states:

Whoever, having been convicted, upon indictment, of larceny or of being accessory to larceny before the fact, afterward commits a larceny or is accessory thereto before the fact, and is convicted thereof upon indictment, and whoever is convicted at the same sitting of the court, as principal or

each individual larceny is punishable by imprisonment of no more than five years, a defendant adjudged a common and notorious thief is instead subject to 20 years imprisonment as an aggregate sentence for all convictions. Compare M.G.L. c. 266, §30(1) (setting punishment for larceny by false pretense), with M.G.L. c. 266, §40.

For his 23 larceny convictions, the petitioner was subject to an aggregate 115 years imprisonment, which was reduced to a maximum sentence of 20 years under §40. Unsatisfied, the petitioner contends that §40 operated in the exact opposite manner and increased the statutory maximum because he only received one sentence rather than 23, and that §40 operated to transform the maximum sentence for that one sentence from five to 20 years. The petitioner's claim fails even if §40 operated to increase the statutory maximum sentence imposed.

Where, as here, the defendant does not contest the fact of his aggravating convictions, the Constitution does not require that the fact of those convictions be found by a jury. The Supreme Court addressed this issue directly in Almendarez-Torres v. United States, 523 U.S. 224 (1998). There, the Court held that where the fact of a defendant's past convictions was uncontested, that fact

_____

accessory before the fact, of three distinct larcenies, shall be adjudged a common and notorious thief, and shall be punished by imprisonment in the state prison for not more than twenty years or in jail for not more than two and one half years.

10

could, consistent with the Constitution, be deemed a sentencing factor, found by a judge on the preponderance of the evidence standard, and used to enhance a defendant's punishment beyond the statutory maximum. Id. at 243.

This holding is not altered by the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Supreme Court held that, generally, a jury, not a judge, must find all facts that increase the possible maximum statutory penalty. 530 U.S. at 497. However, in Apprendi the Court explained that Almendarez-Torres provides a narrow exception to this rule because the "certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [a defendant does] not challenge the accuracy of that 'fact' in his case, mitigate[s] the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." Id. at 488.[7] Almendarez-Torres and Apprendi persuade the court that the petitioner, who does not contest the fact of his conviction of 23 larcenies in a single trial, has no constitutional right to have the fact of aggravating convictions determined by a jury rather than the judge who

---

[7] While the Court also expressed doubts about its decision in Almendarez-Torres, the courts of the First Circuit "are bound to follow [Almendarez-Torres] until it is expressly overruled[.]" United States v. Jimenez-Beltre, 440 F.3d 514, 520 (1st Cir. 2006) (en banc).

11

conducted the trial.

To rebut this conclusion, the petitioner argues that the "fact" at issue is not merely the existence of the larceny convictions. He contends that each of his larcenous acts may have been part of a single larcenous scheme and, therefore, not "distinct" for purposes of §40. However, the First Circuit has held that a federal judge, rather than a jury, may decide, using a preponderance of the evidence rather than a reasonable doubt standard, whether a past conviction is "distinct" for the purpose of enhancing a sentence in a drug case. See United States v. Fink, __ F.3d __, 2007 WL 2326822, *5 (1st Cir. 2007). Therefore, the Appeals Court's decision on this issue was not an unreasonable application of Supreme Court precedent.

Additionally, "three distinct larcenies" means simply a conviction on three separate indictments or charges. See Commonwealth v. Crocker, 384 Mass. 353, 355 (1981). Under §40, a defendant "is simply being given one consolidated sentence for the three larceny offenses of which he has been duly convicted." Id. The "fact" of three distinct convictions for purposes of §40 is, therefore, comparable to the "fact" of a past conviction under Almendarez-Torres and subject to judicial determination. The Appeals Court's decision to this effect was neither contrary to nor

12

an unreasonable application of Supreme Court precedent.[8]

B. Right To Self-Representation or Substitute Counsel

The petitioner contends next that he was denied his right to self-representation or replacement counsel under the Sixth Amendment. Although raised as a single ground, this argument consists of two distinct claims.

1. The Self-Representation Claim

The petitioner's self-representation claim is unexhausted because it was not raised before the SJC. "It is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present -- or do his best to present -- the issue to the state's highest tribunal." Mele v. Fitchburg Dist. Court, 850 F.2d 817, 820 (1st Cir. 1988).

While the court generally will not consider a petition that contains both exhausted and unexhausted claims, the petitioner requests that any unexhausted claims be deleted from the petition. For the reasons discussed in the June 29, 2007 Memorandum and Order, that request is being allowed.

_____

[8] The petitioner does not argue that separate indictments were improper. See Commonwealth v. Donovan, 395 Mass. 20, 27 (1985) (miscarriage of justice arises where defendant is convicted under multiple indictments for a single scheme). Moreover, even assuming that such an argument would raise a federal claim, this court could not hear it because it was not presented and exhausted before the state courts. See 28 U.S.C. §2254(b)(1); Nadworny v. Fair, 872 F.2d 1093, 1101 (1st Cir. 1989).

2. <u>The Substitute Counsel Claim</u>

The Appeals Court held that the petitioner's substitute counsel claim was procedurally defaulted. <u>See</u> <u>Lepper</u>, 60 Mass.App.Ct. at 53-54. Ordinarily, a state procedural rule constitutes an independent and adequate state law ground precluding further review by a federal court. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977). However, a default is not "adequate" if it has been inconsistently applied, or if it is unsupported or unforeseeable. <u>See</u> <u>James v. Kentucky</u>, 466 U.S. 341, 351 (1984) (inconsistent); <u>Wright v. Georgia</u>, 373 U.S. 284, 291 (1963) (unsupported); <u>NAACP v. Alabama ex rel. Patterson</u>, 357 U.S. 449, 457-458 (1958) (unforeseeable). Accordingly, federal courts must ensure the adequacy of a state procedural ruling before foreclosing relief. <u>See</u> <u>Lanigan v. Maloney</u>, 853 F.2d 40, 42-44 (1st Cir. 1988) (reviewing the adequacy of a state procedural default); <u>Liegakos v. Cooke</u>, 106 F.3d 1381, 1385 (7th Cir. 1997) (Easterbrook, J.) (holding that a state court may not apply retroactively new interpretation of procedural rules); <u>Card v. Dugger</u>, 911 F.2d 1494, 1516-1517 (11th Cir. 1990) (holding that a state court's procedural rule must be faithfully and regularly applied and must not be manifestly unfair in its treatment of a petitioner's federal constitutional claim."

Unable to identify the procedural default relied upon by the Appeals Court, this court ordered the parties to file supplemental

14

briefs. <u>See</u> May 22, 2007 Mem. and Order. The respondent now argues that the procedural default arose because "the petitioner never actually asked the trial judge to appoint substitute counsel." Resp. Supp. Mem. at 30. This contention is not persuasive.

The contemporaneous objection rule upon which the respondent relies is codified in Massachusetts Rule of Criminal Procedure 22. It provides:

> Exceptions to rulings or orders of the court are unnecessary and for all purposes for which an exception has heretofore been necessary, it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court[.]

Under Massachusetts law, the adequacy of an objection under Rule 22 is evaluated "in the context of the trial as a whole." <u>Commonwealth v. Koney</u>, 421 Mass. 295, 299 (1995). Therefore, the SJC explains, in other contexts, that "[w]e have insisted on counsel's duty to alert the judge to prosecutorial abuse, but we have not made a fetish of the form or persistence of the objections, lest the accused suffer unduly from the inadvertence of his advocate." <u>Commonwealth v. Hawley</u>, 380 Mass. 70, 86 (1980).

Here, the petitioner complained about his attorney repeatedly to the trial judge, stated that he did not want counsel to represent him, and raised <u>pro</u> <u>se</u> motions for a continuance and mistrial. While the petitioner did not request substitute counsel specifically, defense counsel moved to withdraw during the petitioner's objection. A criminal defendant will not be allowed to

15

represent himself unless he clearly and unequivocally waives his right to counsel. See United States v. Allen, 789 F.2d 90, 94 (1st Cir. 1986). Therefore, the motion to withdraw implicitly requested the appointment of substitute counsel. The petitioner's dissatisfaction and requested action - a mistrial and the appointment of substitute counsel - were made sufficiently clear to the court. Massachusetts Rule of Criminal Procedure 22 require nothing more. An alternative and more restrictive interpretation of the rules could not be applied retroactively to the petitioner to deny him access to a federal court to petition for habeas corpus.

As the Appeals Court relied only on an inadequate state procedural default rule, the court must review the petitioner's substitute counsel claim de novo to determine if there was a violation of federal law. See Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (claims decided on purely state law grounds decided de novo). As a matter of federal law, a "court's decision not to permit substitution of trial counsel is given deference and is reviewed only for abuse of discretion, especially when that decision is based on legitimate trial concerns." United States v. Diaz-Martinez, 71 F.2d 946, 950 (1st Cir. 1995). To that end, the court considers:

> several factors, including the timeliness of the motion, the
> adequacy of the court's inquiry into the defendant's
> complaint, and whether the conflict between the defendant and
> his counsel was so great that it resulted in a total lack of
> communication preventing an adequate defense.

16

<u>Allen</u>, 789 F.2d at 92.

Here, the petitioner did not complain about his counsel until the beginning of trial and the motion to withdraw was not made until the second day. Given the late nature of the objections and motion, the trial judge had considerable discretion to deny the request because "the cases uniformly hold that the right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure." <u>United States v. Poulack</u>, 556 F.2d 83, 86 (1st Cir. 1977); <u>see also</u> <u>Castillo v. Matesanz</u>, 348 F.3d 1, 9-10 (1st Cir. 2003); <u>United States v. Pierce</u>, 60 F.3d 886, 891 (1st Cir. 1995); <u>Maynard v. Meachum</u>, 545 F.2d 273, 278 (1st Cir. 1976) ("The right to counsel of one's choice is not absolute. A court need not tolerate unwarranted delays, and may at some point require the defendant to go to trial even if he is not entirely satisfied with his attorney.").

In view of this authority, the trial judge did not abuse his discretion. He gave the petitioner the opportunity to speak four times, to explain his disagreement over the plea agreement and trial strategy, and to express concern that his appointed counsel had prejudged him. He considered fully the complaints and reasoned that there was not a total breakdown of communication necessitating substitute counsel.

That conclusion was grounded in the record. As found by the

17

trial judge, the petitioner and his counsel consistently communicated throughout the trial. See Sept. 10, 1999 Tr. II at 159. While the petitioner may have been dissatisfied with his counsel's attitude regarding a plea agreement, the Sixth Amendment does not guarantee a meaningful rapport between client and counsel. See Morris v. Slappy, 461 U.S. 1, 13-14 (1983); United States v. Myers, 294 F.3d 203, 207 (1st Cir. 2002).

Although the petitioner argues otherwise, the trial judge was not required to inquire further into counsel's own desire to withdraw. An appropriate inquiry must be made when an accused expresses concern regarding appointed counsel. See Meyers, 294 F.3d at 207; United States v. Prochilo, 187 F.3d 221, 229 (1st Cir. 1999). The trial court made such an inquiry concerning both petitioner's complaints and his appointed counsel's motion to withdraw. Moreover, to the extent that counsel had personal concerns that were distinct from the petitioner's - namely the petitioner's allegedly false claim that his attorney had improperly prejudged him - those concerns are not material to the petitioner's own Sixth Amendment right to counsel. The petitioner's Sixth Amendment rights protect him, not his attorney.

The trial court supportably found, and explained, that there had not been a total breakdown in communication between the petitioner and his counsel. It also found that counsel was doing a "good job" in a "difficult case," meaning that counsel was

18

performing effectively. Therefore, the trial court did not abuse
its discretion in refusing to appoint new counsel for the
petitioner. See, e.g., Myers, 294 F.3d at 206-08; Machor v. United
States, 879 F.2d 945, 952 (1st Cir. 1989).

      C. Ineffective Assistance of Counsel

      The petitioner contends finally that he received ineffective
assistance of counsel, that his claim should be reviewed de novo
because the Appeals Court did not review it, and that if the
Appeals Court did review the claim, the court's decision was either
contrary to or an unreasonable application of Supreme Court
precedent. He is incorrect on all accounts.

      De novo review is available only where the state court fails
to decide a petitioner's federal claims on the merits of federal
law. See Norton, 351 F.3d at 5. Moreover, a state court's indirect
reliance on federal law to decide a federal claim is sufficient to
decide it on the merits. See Petrillo v. O'Neill, 428 F.3d 41, 45
(1st Cir. 2005). The indirect reliance rule applies to the decision
of the Appeals Court.

      The Appeals Court relied indirectly on Commonwealth v.
Saferian, 366 Mass. 89 (1974), in deciding the ineffective
assistance of counsel claim. See Lepper, 60 Mass. App. Ct. at 1041
(citing Commonwealth v. Beauchamp, 49 Mass. App. Ct. 591, 610 (App.
Ct. 2000) and Commonwealth v. Satterfield, 373 Mass. 109, 115
(1977), both of which cite Saferian). Saferian inquires "whether

19

there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense." 366 Mass. at 96. The <u>Saferian</u> standard is virtually identical to the federal standard. <u>See</u> <u>Scarpa v. Dubois</u>, 38 F.3d 1, 8 (1st Cir. 1994). "[W]hile leaving open the theoretical possibility that there might be some difference between the state and federal standards, [the SJC] has concluded that if their state's test is satisfied, 'the Federal test is necessarily met as well.'" <u>Id.</u> (<u>quoting</u> <u>Commonwealth v. Fuller</u>, 394 Mass. 251, 256 n.3 (1985)). Therefore, the Appeals Court's reliance on the <u>Saferian</u> standard is equivalent to application of federal law and its judgment must be reviewed under AEDPA. <u>See</u> <u>id</u>.

Under AEDPA, the petitioner's claim fails. To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonable effectiveness; and (2) that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the trial. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 699-689 (1984); <u>Argencourt v. United States</u>, 78 F.3d 14, 16 (1st Cir. 1996).

When reviewing counsel's performance, "judicial scrutiny of

counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." <u>Strickland</u>, 466 U.S. at 689. Moreover, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id.</u> at 689.

The "prejudice" element of an ineffective assistance claim presents another high hurdle. To show prejudice, a claimant must affirmatively prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

The Appeals Court rejected the petitioner's ineffective assistance of counsel claim because the petitioner failed to demonstrate either ineffectiveness or prejudice. <u>See</u> <u>Lepper</u>, 60 Mass. App. Ct. at 49. As to ineffectiveness, the Appeals Court held that "'[t]he basic trouble from the defense standpoint was weaknesses in the facts rather than any inadequacy of counsel.'" <u>Id.</u> at 50 <u>quoting</u> <u>Satterfield</u>, 373 Mass. at 111. In support, it quoted approvingly the trial judge's finding that:

> "Defense counsel made a forceful argument on [the defendant's] motion for a required finding of not guilty regarding whether false statements were made. [The defendant's] trial counsel

21

presented to the jury in an organized fashion [the defendant's] check registers, bank statements, and other data, as well as witness testimony that [the defendant] had paid bills to suppliers, had legitimate business expenses and had built some buildings. Defense counsel's closing argument focused on the elements of the crime and asserted that [the defendant] was merely an inexperienced businessman with good intentions who was experiencing difficulties in his personal life. With one hundred and twenty-one exhibits on their hands, the jurors were armed with sufficient information on which to reach a fair result."

Lepper, 60 Mass. App. Ct. at 50 n.8 (alterations in original).

The petitioner argues that the Appeals Court applied the incorrect legal standard and that its judgment was, therefore, "contrary to" clearly established law. In support, he contends that the "reach a fair result" phrase quoted by Appeals Court from the end of the trial court's decision took the Appeals Court's analysis out of the ineffective assistance of counsel framework establish in Strickland and into the "fundamental fairness" framework rejected by the Supreme Court in Williams, 529 U.S. at 394. This argument is not persuasive.

In Williams, the Supreme Court held that, where counsel's conduct was both ineffective and prejudicial, Strickland demands relief and that a petitioner need not make an additional showing that the outcome of the trial was fundamentally unfair or defective. 529 U.S. at 394. However, the mere quotation of the trial court's "fair result" phrase by the Appeals Court did not transform its ineffectiveness analysis into a requirement that the petitioner demonstrate fundamental unfairness. Rather, the Appeals

22

Court held that counsel was not ineffective because he had presented all the evidence and theories necessary for the jury to reach a fair result. The "fair result" phrase was mere dicta. Accordingly, the Appeals Court did not act contrary to clearly established law. Rather, it correctly relied upon the Strickland ineffectiveness standard.

The petitioner next argues that the Appeals Court's decision was an unreasonable application of Supreme Court precedent. In support, he cites Washington v. Texas, 388 U.S. 14 (1967), and maintains that he had a right to have his attorney present "all exculpatory evidence." The petitioner misconstrues the law. In Washington, the Supreme Court held that the Sixth Amendment guarantee of compulsory process for a criminal defendant applies to the states through the Fourteenth Amendment. 388 U.S. at 19. That issue is not implicated here. Although the defendant has the right to compel a witness to testify, he does not have the right to have his attorney present every possibly exculpatory piece of evidence. To the contrary, the Constitution does not guarantee "a letter-perfect defense or a successful defense." United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991).

The Appeals Court was not unreasonable in concluding that the petitioner's trial counsel performed within the range of reasonable professional assistance. The trial judge found, and Appeals Court affirmed, that counsel clearly and professionally presented the

petitioner's defense theory as well as evidence in support of it. While the presentation of cancelled checks rather than a check register might, as the petitioner argues, have more persuasively supported the defense theory, it was not unreasonable for the Appeals Court to conclude that this is insufficient to demonstrate that counsel's performance was inadequate.

In view of the reasonableness of the Appeals Court's conclusion, it is unnecessary to address whether the court's alternative basis for its holding, that the petitioner was not prejudiced by the alleged error, was also reasonable.

IV. ORDER

For the reasons discussed in this Memorandum, it is hereby ORDERED that the Petition For Habeas Corpus (Docket No. 1) is DENIED.


                                        /S/ MARK L. WOLF
                                        UNITED STATES DISTRICT JUDGE