UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FREDERIC LEPPER,<br>    Petitioner,<br>v.<br><br>LOIS RUSSO,<br>    Respondent. | CIVIL ACTION NO. 04-11879-MLW |

MEMORANDUM IN SUPPORT OF
APPLICATION FOR CERTIFICATE OF APPEALABILITY

In order for the petitioner to be permitted to appeal his case to the First Circuit, this Court must grant the petitioner a certificate of appealability (COA) under 28 U.S.C. § 2253. The test for issuance of a COA is designed to weed out only the most unworthy appeals. Under the Supreme Court's interpretation of § 2253, this Court must grant the petitioner a COA if reasonable jurists could find the correctness of the dismissal of the petition to be merely debatable; this is so even if this Court is completely convinced that it came to the correct conclusion in dismissing the petition for a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); 28 U.S.C. § 2253.  This case should not die without review by the First Circuit. Without such review, the petitioner faces the remainder of a lengthy prison sentence where the statutory maximum sentence was increased without a necessary finding by the jury and where trial counsel failed to introduce substantial exculpatory evidence.

**I.    The applicable standard for issuance of a certificate of appealability where the claims were denied on the merits is whether the claim is debatable.**

In considering whether to issue a COA, this Court considers each issue separately and only issues a COA for those issues that meet the standards set out in 28 U.S.C. § 2253 (and

Supreme Court precedent interpreting § 2253). *Bui v. DiPaolo*, 170 F.3d 232, 237 (1st Cir. 1999). If the Court is at all in doubt whether to issue the COA, the Court must resolve those doubts in favor of granting the COA. *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000). Finally, if this Court denies the COA, it must state the reasons supporting its decision. Local Rule 22.1(a).

Section 2253 requires that the petitioner make "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). This standard is explicitly drawn from the Supreme Court's prior "Certificate of Probable Cause" jurisprudence under the former § 2253 and *Barefoot v. Estelle*. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). In *Barefoot*, the Court emphasized that the petitioner need not demonstrate that:

> he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'

Id. at n. 4 (emphasis in original).

In *Miller-El v. Cockrell*, the Supreme Court re-emphasized that the inquiry for determining whether to grant a COA for substantively denied claims is merely a "threshold" inquiry. *Miller-El*, 537 U.S. at 327, 336. The Supreme Court has repeatedly and emphatically stated that the "debatable among jurists of reason" prong is designed to be permissive, rather than restrictive. *Miller-El*, 537 U.S. at 327; *Banks v. Dretke*, 540 U.S. 668, 705 (2004). In *Miller-El*, the Supreme Court reiterated that it:

> do[es] not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable

> even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Miller-El*, 537 U.S. at 338 (emphasis added). According to the *Miller-El* Court, "debatable" means just that. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336. Bearing this permissive standard in mind, the Court should issue a COA in this case on both grounds.

II. **A certificate of appealability must issue because, after a mere threshold inquiry, jurists of reason would find the petitioner's Fifth Amendment claim debatable.**

This Court's decision that the petitioner's Fifth Amendment claim lacked merit was based largely on its findings that there was no increase in the statutory maximum because the sentences for the various larcenies could have been stacked to obtain the same sentence and its finding that whether the larcenies were distinct is not a factual question. Both of those propositions are debatable.

First, the Supreme Court has expressly rejected the notion that the Fifth Amendment problem can be avoided if the defendant has been convicted of multiple convictions that would allow the same sentence through consecutive sentences. As the Supreme Court wrote:

> It is appropriate to begin by explaining why certain aspects of the case are not relevant to the narrow issue that we must resolve. First, the State has argued that even without the trial judge's finding of racial bias, the judge could have imposed consecutive sentences on counts 3 and 18 that would have produced the 12-year term of imprisonment that Apprendi received; Apprendi's actual sentence was thus within the range authorized by statute for the three offenses to which he pleaded guilty. Brief for Respondent 4. The constitutional question, however, is whether the 12-year sentence imposed on count 18 was permissible, given that it was above the 10-year maximum for the offense charged in that count. The finding is legally significant because it increased -- indeed, it doubled -- the maximum range within which the judge could exercise his discretion, converting what otherwise was a maximum 10-year

> sentence on that count into a minimum sentence. The sentences on counts 3 and 22 have no more relevance to our disposition than the dismissal of the remaining 18 counts.

Apprendi v. New Jersey, 530 U.S. 466, 474 (2000); See also, United States v. Jones, 235 F.3d 1231, 1238 (10th Cir. 2000) (court may not find Apprendi error harmless on the ground that the same sentence could have resulted from imposing consecutive sentences on separate counts). Similarly, in the instant case, where the finding of distinctness increased the maximum sentence on count one of the indictment from 5 years to 20 years, the sentences on the remaining counts is likewise not relevant.

Second, the determination of whether multiple larcenies tried at the same time are distinct is not simply a matter of counting indictments. The case relied on by this Court, *United States v. Fink*, __ F.3d __, 2007 WL 2326822, *5 (1st Cir. 2007), does not control this issue. In *Fink*, the First Circuit considered what the government's burden was in regards to a hearing under 21 U.S.C. § 851 to establish prior convictions. The First Circuit's decision has no bearing on the interpretation of G.L. c. 266, § 40 which requires that the defendant be "convicted at the same sitting of the court, as principal or accessory before the fact, of three distinct larcenies." The word "distinct" does not appeal in § 851. Moreover, the Massachusetts legislature could have written § 40 to say simply "three larcenies." In that situation, the petitioner may not be able to raise his instant claim. However, the legislature added the word "distinct" and in doing so imposed a burden on the government of proving that the larcenies were not just three in number, but also that they were distinct from one another.

Under Massachusetts law, whether the larcenies are distinct is a factual question. The Massachusetts Supreme Judicial Court has held that "successive takings of property actuated

by a single, continuing criminal impulse or intent or pursuant to a general larcenous scheme may, but need not, be charged as one crime." Commonwealth v. Murray, 401 Mass. 771, 774 (1988). For instance, the Supreme Judicial Court went further has ruled that it would be appropriate for a defendant who had established a phony night deposit box to only be convicted of a single larceny even though seven individuals had made deposits. Commonwealth v. Donovan, 395 Mass. 20, 27-28 (1985). Other cases, dating back to before the Civil War, recognize that distinctness is a factual question that is open to argument in any given case. See e.g. Stevens v. Commonwealth 45 Mass. 360, 364-65 (1842) (court must look to facts of the larcenies to determine whether they are distinct; Commonwealth v. Crocker, 384 Mass. 353, 356 n. 5 (1981); Commonwealth v. Lane, 25 Mass. App. Ct. 1002, 1003-04 (1988) (scheme to rent the same apartment to as many people as possible).

As the petitioner's Fifth Amendment claim is debatable, a COA should issue.

**II.     A certificate of appealability must issue because, after a mere threshold inquiry, jurists of reason would find the petitioner's Sixth Amendment claim debatable.**

In denying the Petition for Habeas Corpus, this Court found that:

> While the presentation of cancelled checks rather than a check register might, as the petitioner argues, have more persuasively supported the defense theory, it was not unreasonable for the Appeals Court to conclude that this is insufficient to demonstrate that counsel's performance was inadequate.

(Memorandum of August 31, 2007 at p. 24). While that may be true as far as it goes; it does not go far. Not only would the cancelled checks have been stronger evidence that the person or entity listed on the check was actually paid, but the cancelled checks were necessary because the check register was far from complete. There are nearly fifty checks totaling over $52,000 (a large percentage of the business revenue) for which the register either lists only a

dollar amount or is completely blank.

Moreover, the petitioner faults trial counsel not only for failing to introduce the cancelled checks, but also for failing to marshal the existing evidence in a way that the jurors could understand. The jurors were presented with 121 exhibits, the vast majority of which were introduced by the government. Trial counsel selected a few exhibits for admission and basically asked the jurors to go through the check register to see that the petitioner had tried to run a business. In essence, trial counsel asked the jurors to do his job. Trial counsel should have done more with the evidence so the jurors could appreciate the exculpatory nature of the various records that had been introduced. The petitioner submitted a variety of reports (cash flow, amounts to each payee, and a chronological transaction report of the business accounts) in connection with his motion for new trial. Compiling those reports took a substantial amount of time even with the benefit of a computer. Leaving that task for the jurors to do on their own in the jury room is simply unacceptable: counsel's representation fell below an objective standard of reasonableness and prejudiced the petitioner.

Although the "fair result" phrase of the Appeals Court may have been *dicta*, it reveals the way in which that court considered the petitioner's ineffective assistance of counsel claim. Where it appears the court was more concerned with whether the result was fair than with applying the proper legal standard, it the defendant's Sixth Amendment claim is debatable. As the claim is debatable, a COA should issue.

### III. Conclusion

This Court should grant the petitioner a certificate of appealability as to each issue.

>                    FREDERIC LEPPER
>                    By his attorney,
>
>
>                     /s/ Alan D. Campbell
>                    Alan D. Campbell
>                    B.B.O. No. 634188
>                    P.O. Box 131
>                    Brookline, MA 02446
>                    (617) 735-8913

Dated: September 28, 2007

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 28, 2007.

>                     /s/ Alan D. Campbell
>                    Alan D. Campbell